884 F.2d 1222
 58 USLW 2185, Fed. Sec. L. Rep. P 94,567
 George FRANKLIN, On Behalf of Himself and All Others
Similarly Situated, Plaintiffs,
v.
KAYPRO CORPORATION; Andrew F. Kay; David Kay; Allan M.
Kay; Mary M. Kay; Prudential-Bache Securities,
Inc., Defendants.
In re KAYPRO CORPORATION, SHAREHOLDER LITIGATION.
PRUDENTIAL-BACHE SECURITIES, INC., Defendant-Cross-claimant-Appellant,
v.
KAYPRO CORPORATION; Andrew F. Kay; David A. Kay; Allan M.
Kay, Plaintiffs-Cross-claimants-Appellees.
In re KAYPRO CORPORATION SECURITIES LITIGATION.
George FRANKLIN, On Behalf of Himself and All Others
Similarly Situated, Jon Quint; Ellen Quint; Stefan Reznik;
William B. Weinberger; Richard Lowe; Paul L. Holmes;
Evelyn S. Holmes, Plaintiffs-Appellees,
v.
KAYPRO CORPORATION; Andrew F. Kay; David A. Kay; Allan M.
Kay; Mary M. Kay; Arthur B. Laffer; Bradford W.
Ryland; Ludwig Weindling; Roger S.
Wooley, Defendants-Appellants,
v.
PEAT MARWICK MAIN & COMPANY, Defendant-Appellant.
 Nos. 88-5931, 88-5934.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 7, 1989.
Decided Sept. 6, 1989.
 
 J. Anthony Sinclitico, III, Gibson, Dunn & Crutcher, San Diego, Cal., and John A. Shutkin, New York City, for defendants-appellants.
 Stephen Young, Robert D. Feighner, and Ben Suter, Keesal, Young & Logan, San Francisco, Cal., for defendant-cross-claimant-appellant.
 William S. Lerach, Milbert, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal. and Michael P. Fuchs, Wolf Popper Ross Wolf & Jones, New York City, for plaintiffs-defendants-cross-claimants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before FARRIS, FERGUSON and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 This is an appeal from a pretrial order by the district court approving settlement with some but not all defendants in a securities action. The class action consists of cases consolidated as In re Kaypro Shareholders Securities Litigation, No. 84-2091-N(I). The plaintiff class includes all persons, except defendants, who acquired common stock of Kaypro Corporation between August 25, 1983 and July 17, 1984. The defendants are Kaypro Corporation, eight of its officers and directors, Peat Marwick Main & Company, and Prudential-Bache Securities, Inc., named in its corporate capacity and as the representative of a class of underwriters. Because substantial legal rights of Prudential-Bache and Peat Marwick are affected by the district court's order, they have standing to appeal. Waller v. Financial Corp. of America, 828 F.2d 579, 583 (9th Cir.1987). We have jurisdiction pursuant to rule 54(b) of the Federal Rules of Civil Procedure, and we affirm in part and remand in part.
 
 
 2
 * The plaintiffs' complaint alleges that on August 25, 1983, Kaypro commenced an initial public offering of four million shares of Kaypro common stock at the price of ten dollars per share. The complaint further alleges that between August 25, 1983 and July 17, 1984 the defendants distributed false and misleading statements and reports concerning Kaypro.
 
 
 3
 On July 17, 1984 Kaypro released its third quarter earnings report showing essentially flat earnings. In September 1984 Kaypro reported that it was unable to locate or account for inventory valued at several million dollars. Kaypro's 1984 Annual Report indicated that a twenty million dollar operating profit reported for the first nine months of the year was completely eliminated by accounting adjustments. As these and other adverse facts became known, the market price of Kaypro's common stock fell to between two and three dollars per share.
 
 
 4
 After the initial complaints were filed, the district court considered the sufficiency of the complaints, and certification of the plaintiff stock purchaser and defendant underwriter classes. The parties also undertook document and interrogatory discovery. After certifying the classes and consolidating the complaints, the district court ordered status and settlement hearings before a magistrate. After extended hearings and negotiations, the plaintiff class signed a stipulation of settlement with Kaypro and its officers and directors ("settling defendants"). Prudential-Bache and Peat Marwick ("nonsettling defendants") participated in settlement hearings but declined to join the settlement.
 
 
 5
 The plaintiffs' consolidated amended complaint seeks a damage judgment for $25 million. An analysis commissioned by the plaintiffs indicated theoretical damage of between $19 million and $22 million. Peat Marwick asserted in a settlement statement that the total damage figure did not exceed $5 million. The plaintiffs and the settling defendants agreed to settle for $9.25 million.
 
 
 6
 On October 19, 1987 the magistrate conducted a good faith hearing on the settlement. The nonsettling defendants filed briefs and participated in the hearing. After briefing and hearings extending over two months, the magistrate issued proposed findings of fact and a recommended final judgment and order of dismissal declaring that the settlement was made in good faith.
 
 
 7
 The nonsettling defendants moved for de novo review by the district court. After conducting its own hearing, the district court adopted the findings and conclusions of the magistrate. Both the magistrate and the district court conducted a good faith hearing in accordance with procedures specified in sections 877 and 877.6 of the California Code of Civil Procedure.[1] The nonsettling defendants now appeal and claim that the order approving settlement was impermissibly entered.
 
 
 8
 A proposed partial settlement of complex, class action litigation involving the potential for substantial damages raises a number of concerns. Trial courts in which litigation is pending have a natural desire to clear court dockets of complex litigation in as expeditious a manner as possible. This desire, however, is tempered by the need to assure factual fairness and the correct application of legal principles. See Menkel-Meadow, For and Against Settlement: Uses and Abuses of the Mandatory Settlement Conference, 33 UCLA L.Rev. 485, 486-90 (1985).
 
 
 9
 In general, the policy of federal courts is to promote settlement before trial. "Since it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible." Fed.R.Civ.P. 16(c) advisory committee note; see Fed.R.Evid. 408 advisory committee note ("public policy favor[s] the compromise and settlement of disputes"). Settlement conferences are incorporated by rule into pretrial conferences. Fed.R.Civ.P. 16(c). In class actions such as this, a settlement requires the approval of the court. Fed.R.Civ.P. 23(e); see Note, Abuse in Plaintiff Class Action Settlements: The Need for a Guardian During Pretrial Settlement Negotiations, 84 Mich.L.Rev. 308, 320-25 (1985) (discussing court supervision of settlements).
 
 
 10
 An overwhelming majority of class action suits settle before reaching trial. One study indicated that seventy-one percent of such suits filed settled before trial. Jones, An Empirical Examination of the Resolution of Shareholder Derivative and Class Action Lawsuits, 60 B.U.L.Rev. 542, 544-47 (1980). The reasons for this are quite understandable. Litigation settlements offer parties and their counsel relief from the burdens and uncertainities inherent in trial. In class action litigation, plaintiffs' counsel may be encouraged to enter settlement with some defendants to obtain financial resources with which to assure payment of the costs of continuing litigation against the remaining defendants. The plaintiffs and the class they represent may view some recovery by way of settlement more favorably than the risk of recovering nothing. Even if liability is considered certain, the present value of money received in settlement may be greater than the value of a judgment entered at some future date. Some defendants may pay a negotiated settlement sum in order to avoid litigation costs or to hedge against the risk of an excessive adverse damage verdict. The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process.
 
 
 11
 In spite of its attractiveness, obtaining a settlement in multi-party litigation may be quite complex. The facts specified in the pleadings may give rise to cross claims or counterclaims based on contribution or indemnity. In such cases, settling defendants cannot obtain finality unless a "bar order" is entered by the court. In essence, a bar order constitutes a final discharge of all obligations of the settling defendants and bars any further litigation of claims made by nonsettling defendants against settling defendants.
 
 
 12
 The settlement agreement at issue in this appeal is expressly conditioned on obtaining an order from the district court that the nonsettling defendants' rights to contribution are satisfied and that further contribution is barred.[2] The bar order was issued after hearings before a magistrate and the district court. The nonsettling defendants argue that the bar order impermissibly infringes their right to full contribution from the settling defendants. The appeal poses a question of first impression.
 
 II
 
 13
 Subsection 11(f) of the Securities Act of 1933, now codified at section 77k(f) of Title 15 of the United States Code, provides for a right of contribution among those defendants who are found jointly and severally liable in certain securities actions.
 
 
 14
 (f) All or any one or more of the persons specified in subsection (a) of this section shall be jointly and severally liable, and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.
 
 
 15
 15 U.S.C. Sec. 77k(f). Subsection 11(f), in turn, was taken "almost bodily" from England's Companies Act 1929. 3 L. Loss, Securities Regulation 1737 (1961); see Companies Act, 1929, 19 & 20 Geo. 5, ch. 23, Sec. 37(3).[3] Contribution is not limited to section 11(f) of the 1933 act. Sections 9(e) and 18(b) of the Securities Exchange Act of 1934 also provide for contribution.[4] Furthermore, it has been determined that a right to contribution exists under claims based on section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission's rules, 17 C.F.R. Sec. 240.10b-5. See, e.g., Heizer Corp. v. Ross, 601 F.2d 330, 334 (7th Cir.1979).
 
 
 16
 There is no question that the right to contribution is governed by federal law. In Laventhol, Krekstein, Horwath & Horwath v. Horwitch we recognized that "[section] 77k(f) has said it all." 637 F.2d 672, 675 (9th Cir.1980), cert. denied, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). In Smith v. Mulvaney we went on to hold that contribution, as guaranteed by section 77k(f), is not pro rata, but is based instead on the actual relative culpabilities of the tortfeasors. 827 F.2d 558, 561 (9th Cir.1987).
 
 
 17
 Merely saying, however, that cotortfeasors have a right to contribution based on relative culpability says very little. The federal securities laws do not specify how the contribution right applies in the case of a partial settlement. Nor are there any other well-established standards in this area. Early American and English common law had a rule against contribution among joint tort feasors. This rule sprang from the case of Merryweather v. Nixan, 101 Eng.Rep. 1337 (1799). Early American courts applied the rule only to cases of willful misconduct; however, once procedural rules were changed to allow joinder of persons who had negligently caused the same damage, courts began to apply the rule generally. W. Keeton, D. Dobbs, R. Keeton and D. Owen, Prosser & Keeton on the Law of Torts Sec. 50, at 337 (5th ed. 1984). By the beginning of this century, the rule had become entrenched in nearly every jurisdiction.
 
 
 18
 The extension of the rule against contribution to negligent tort feasors engendered much criticism.[5] The rule was criticized as enormously unfair and for facilitating collusion between plaintiffs and wrongdoers. See Skinner v. Reed-Prentice Division Package Machinery Co., 70 Ill.2d 1, 13, 15 Ill.Dec. 829, 834, 374 N.E.2d 437, 442 (1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). In 1939 the American Law Institute proposed a Uniform Contribution Among Tortfeasors Act.[6] An amended Uniform Act was proposed in 1955. By the 1970s, "half a century of vigorous attack upon the original rule [ ] had its effect in the passage of statutes in most states, which to a greater or lesser extent permit contribution among tortfeasors." Prosser, Sec. 50, at 338.
 
 
 19
 In short, contribution was not part of the early American common law, and in fact was actively disapproved by the courts. It has been resurrected jurisdiction by jurisdiction. Many states have adopted the Uniform Act, some have created their own statutory scheme, and a few have adopted contribution through judicial decree.[7] Far from vanishing, see Reath, supra note 5, at 178, contribution has become a vibrant and complex facet of the law.
 
 
 20
 Against this general background can be viewed the development of contribution in federal securities law. As with contribution in state jurisdictions, it is the product of a statutory mandate. Unlike most state schemes, however, section 77k(f) is not supported by any statutory or regulatory infrastructure, nor is there a large body of case law. Congress has not enacted the Uniform Contribution Among Tortfeasors Act or provided any other statutory guidance.
 
 
 21
 The legislative history of section 11(f) of the Securities Act is very sparse. See Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting Conspiracy in Pari Delicto, Indemnification and Contribution, 120 U.Pa.L.Rev. 597, 650 & n. 236 (1972). It is clear, however, that Congress intended the section to complement the overall purposes of the act. The overarching purpose of the Securities Act of 1933, and of the subsequent Securities Exchange Act of 1934, was to restore confidence in the market. Confidence was to be restored by forcing the public disclosure of facts sufficient to permit prudent investors to understand the risks assumed when purchasing a security offered for sale to the public. One of the most important changes brought about by the legislation was that it made accountable all parties who were responsible for public reports. See H.R.Rep. No. 85, 73d Cong., 1st Sess. 9 (1933); Scott, Resurrecting Indemnification: Contribution Clauses in Underwriting Agreements, 61 N.Y.U.L.Rev. 223, 234-38 (1986).
 
 
 22
 Much of the early attention paid to the new federal right to contribution focused on the phrase "as in cases of contract." This phrase was also found in the English statute; its inclusion there was most likely intended to eliminate problems that then[8] existed in English tort law. See Douglas & Bates, The Federal Securities Act of 1933, 43 Yale L.J. 171, 178 & n. 30 (1933). Reliance on this phrase, however, is not helpful to the student of contribution. In one of the two opinions we have issued on section 77k(f) we wrote that "Congress more likely intended the phrase 'as in cases of contract' to express a departure from the traditional no contribution rule of tort law." Smith, 827 F.2d at 561. Since we recognize the doctrine of contribution among joint tortfeasors in securities cases, we must determine the source of law to be applied in the context of a pretrial settlement reached by some but not all defendants.
 
 III
 
 23
 The nonsettling defendants concede that there is no statutory provision and no established federal common law which provides an easy resolution to this appeal. Cf. Herzfeld v. Laventhol, Krekstein, Horwath & Horwath, 378 F.Supp. 112, 135 (S.D.N.Y.1974) (describing federal parameters as a "vacuum"), modified on other grounds, 540 F.2d 27 (2d Cir.1976). That contribution is a complex matter can be illustrated merely by thumbing through the hundreds of pages in a treatise such as American Jurisprudence Second that elucidate state-law rights to contribution. That our two prior decisions, Laventhol and Smith, do not provide full guidance is amply demonstrated by the fact that both sides vigorously argue that both opinions support them.
 
 
 24
 In this vacuum, courts have adopted a variety of approaches to partial pretrial settlements. A number of district courts have, as in this case, adopted the law of the forum state. E.g., Kirkorian v. Borelli, 695 F.Supp. 446 (N.D.Cal.1988); Herzfeld, 378 F.Supp. at 135. Use of forum state law has several advantages. The courts and the parties are given a comprehensive body of applicable law.[9] Federal and state claims in a given lawsuit can be decided uniformly. See First Federal Savings & Loan v. Oppenheim, Appel & Dixon, 631 F.Supp. 1029, 1036 (S.D.N.Y.1986). These qualities are not taken lightly. We feel, however, that the disadvantages are greater. Not all forums have laws governing contribution. See Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO, 451 U.S. 77, 87 n. 17, 101 S.Ct. 1571, 1578 n. 17, 67 L.Ed.2d 750 (1981) (Thirty-nine states and the District of Columbia allow contribution.). Nor are laws governing contribution uniform: some states adopted the Uniform Act, some created their own statutory scheme, and some adopted contribution through judicial fiat. See id. Furthermore, even those forums that have identical statutory language will diverge when their courts interpret and refine the laws. Such an environment would be chaotic to both litigants and courts. Results would be disparate and forum shopping would be rampant.
 
 
 25
 We agree, therefore, with those courts that have called for the creation of federal common law to govern this issue.[10] See, e.g., Singer v. Olympia Brewing Co., 878 F.2d 596, 599 (2d Cir.1989); In re Sunrise Securities Litigation, 698 F.Supp. 1256, 1257 (E.D.Pa.1988). Partial settlements and bar orders affect substantive rights that are the province of federal courts in securities actions.[11] Compare Wolf v. Frank, 477 F.2d 467, 479 (5th Cir.) (federal law governs substantive issue of prejudgment interest), cert. denied, 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973) with Wood v. Combustion Eng'g, Inc., 643 F.2d 339, 341-42 (5th Cir.1981) (state law governs procedural issue of applicable statute of limitations).
 
 IV
 
 26
 As a basis for establishing the federal common law, the parties and the federal decisional law present us with three alternatives. We discuss each in turn.
 
 
 27
 The nonsettling defendants urge us to prohibit settlements that bar further contribution. They contend that contribution is a statutorily vested right that cannot be divested before a full trial. They argue that, even if our prior decisions do not define the contours of contribution, they at least prohibit bars to further contribution before a full trial. Nonsettling defendants read too much into the decisions. There is nothing in either the statute or our prior decisions that says contribution cannot be satisfied prior to a full trial. See In re Nucorp Energy Securities Litigation, 661 F.Supp. 1403, 1408 (S.D.Cal.1987). In Laventhol, although we did hold that that particular settlement agreement could not be enforced, we noted that "[i]f it could be said that [the settling defendants'] settlement with the plaintiff class had resulted in their bearing their proper share of damages, the case might be different." 637 F.2d at 675.[12]
 
 
 28
 Smith came to us in a different procedural posture: we were asked to review a summary judgment in favor of settling defendants. We found "that the evidence on which the trial court based its decision fail[ed] to support adequately a conclusive finding that the settling defendants paid their proper share of damages." 827 F.2d at 561.
 
 
 29
 The nonsettling defendants simplistic approach would preclude partial pretrial settlement.[13] In Laventhol we noted that the "right of contribution is enunciated clearly [in section 77k(f) ]; the statute is silent as to the encouragement of settlements." 637 F.2d at 675. The nonsettling defendants seize upon this silence as evidence that settlement should be discouraged. The nonsettling defendants read too much into the silence. As we have noted before, "it hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits...." Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir.1976). The Southern District of California explained why not allowing contribution rights to be satisfied before trial would eliminate partial settlements:
 
 
 30
 [I]f the non-settling defendants' construction is correct then partial settlement of any federal securities question before trial is, as a practical matter, impossible. Any single defendant who refuses to settle, for whatever reason, forces all others to trial. Anyone foolish enough to settle without barring contribution is courting disaster. They are allowing the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented.
 
 
 31
 Nucorp Securities Litigation, 661 F.Supp. at 1408.
 
 
 32
 In short, we do not believe that Congress intended to preclude partial settlements, nor do we think Congress intended the right to contribution to be inextinguishable. Therefore, we decline to prohibit orders that bar further contribution.
 
 
 33
 A second alternative is suggested by the Second Circuit. Singer v. Olympia Brewing Co., 878 F.2d 596 (2d Cir.1989). Under this scheme the settlement payment acts as an offset: the entire amount of damage is determined at a full trial, the settlement amount is deducted from that amount, and the nonsettling defendants are required to pay the remainder.
 
 
 34
 The strongest argument for adoption of this rule is that it adheres to the one satisfaction rule. "It is a fundamental legal principle that an injured party is ordinarily entitled to only one satisfaction for each injury." U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1236 (10th Cir.1988). Because the settlement amount is merely offset from the total amount, the combined amounts paid by the settling defendants and by the nonsettling defendants can never be larger than the total amount of damages sustained by the plaintiffs.[14] For reasons we explain later, we think this advantage is illusory.
 
 
 35
 There are several disadvantages to this scheme. Plaintiffs may be tempted to engage in collusion with certain defendants. By accepting a low partial settlement, plaintiffs would be able to fund further litigation with no diminution of the total amount eventually received. Similarly, plaintiffs could effect low settlements with defendants who had limited resources, and thereby force wealthier defendants to pay more than if all parties proceeded to trial.[15]
 
 
 36
 Some argue that a good faith hearing prevents these evils. We disagree. In the first place, a good faith hearing "means bogging down the settlement process in a miniature trial before trial." Donovan v. Robbins, 752 F.2d 1170, 1181 (7th Cir.1985). In order to be truly efficacious, the good faith hearing would require a full evidentiary hearing on all of the parties' relative culpabilities. This would negate many of the benefits of settlement.
 
 
 37
 Furthermore, the very dynamics of settlement guarantee that, even with a good faith hearing, the offset scheme forces nonsettling defendants to pay more than the amount for which they are culpable. Settlement is attractive to parties because it reduces litigation costs. Therefore, plaintiffs are willing to settle for less than they might receive if a claim were fully litigated.[16] See Elliot, Managerial Judging and the Evolution of Procedure, 53 U.Chi.L.Rev. 306, 332-33 (1986). Courts are instructed to allow this discounting when determining whether a partial settlement was entered in good faith. See Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal.3d 488, 499, 698 P.2d 159, 166, 213 Cal.Rptr. 256, 263 (1985) (explaining Cal.Code Civ.P. Sec. 877.6); Manual for Complex Litigation 2d Sec. 30.44 (1986) (discussing Fed.R.Civ.P. 23). Plaintiffs are willing to forego this money, and courts correctly approve the discount. Nonetheless, under the offset scheme, nonsettling defendants are forced to pay to plaintiffs the amount of the discount.
 
 
 38
 In Smith v. Mulvaney, we were asked to determine whether the right to contribution should be apportioned on the basis of relative culpability or on a pro rata basis. 827 F.2d at 559. We found that "[c]ontribution is an equitable doctrine. To apportion damages without regard to fault reduces, to an extent, the equity which the doctrine was intended to provide." Id. at 561. Although we do not lose sight of the fact that we are speaking of equities between wrongdoers, we decline to back away from our goal of equity.
 
 
 39
 We need not do so. The final alternative, expounded by the Eastern District of Pennsylvania in In re Sunrise Securities Litigation, 698 F.Supp. 1256 (E.D.Pa.1988), satisfies the three goals we have discussed above: the statutory goal of punishing each wrongdoer, the equitable goal of limiting liability to relative culpability, and the policy goal of encouraging settlement.
 
 
 40
 This scheme contemplates a partial settlement approved by the district court under Rule 23. Nonsettling defendants are then barred from further rights of contribution from the settling defendants. At trial, the jury is asked not only to determine the total dollar damage amount, but also the percentage of culpability of each of the nonsettling defendants as well as that of the settling defendants.[17] Nonsettling defendants as a whole will then be required to pay the percentage of the total amount for which they are responsible. The nonsettling defendants will be jointly and severally liable for that percentage, and will continue to have rights of contribution against one another.
 
 
 41
 This approach satisfies the statutory goal of punishing each wrongdoer. Patently collusive or inadequate settlements are prohibited by Rule 23. To the extent that plaintiffs manage their own litigation, they could easily withdraw their complaint or settle with all defendants: there is no requirement in the statute that defendants pay a given amount of money.[18] See Herzfeld v. Laventhol, Krekstein, Horwath & Horwath, 540 F.2d 27, 30 (2d Cir.1976) (requiring each defendant to pay a pro rata sum regardless of relative culpability).
 
 
 42
 The goal of equity is also satisfied. Settling defendants pay an amount to which they voluntarily agree. The bar on further contribution extinguishes further risk on their part. Nonsettling defendants never pay more than they would if all parties had gone to trial. This comports with the equitable purpose of contribution. See Smith, 827 F.2d at 561. Furthermore, this approach leaves the burdens of proof intact, alleviating Prudential-Bache's complaint that a good faith hearing under section 877.6 forces the burden of proof onto the nonsettling defendants. Obviously, there will be a certain amount of "fingerpointing" at the "empty chair." See Sunrise Securities, 698 F.Supp. at 1260. However, settling defendants will be protected by the bar order, and the financial motives of both plaintiffs and nonsettling defendants to vigorously press their arguments at trial will be unchanged.
 
 
 43
 Finally, this approach satisfies the policy goal of encouraging settlements. Defendants that are inclined to settle may do so without penalty or risk.
 
 
 44
 The Second Circuit argues that the approach we adopt may violate the one satisfaction rule. Singer, 878 F.2d at 600. We do not agree.
 
 
 45
 The one satisfaction rule provides that a plaintiff is only entitled to one satisfaction for any given injury. The Second Circuit paints this scenario: plaintiffs settle with some defendants for a large sum, at trial the nonsettling defendants are found to be primarily responsible for the damage and are required to pay a large sum, and plaintiffs end up with more money than they would have received if all parties had gone to trial. This, argues the Second Circuit, violates the one satisfaction rule.
 
 
 46
 In the first place, we do not believe that the plaintiffs in the above scenario have received more than one satisfaction for the same injury. All of the defendants are required to contribute, none pay the entire damages. The plaintiffs are merely receiving more money than they might have in different circumstances. If all of the defendants had settled for a sum larger than the trial verdict, the one satisfaction rule would not be violated. There is little conceptual difference between that and only some of the defendants settling for a larger amount.
 
 
 47
 In the second place, it is not entirely clear that the one satisfaction rule applies in these circumstances. The rule is based in common law; it is not statutorily mandated. U.S. Industries, 854 F.2d at 1236. Contribution, on the other hand, is a statutory deviation from the common law. Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 634, 101 S.Ct. 2061, 2063, 68 L.Ed.2d 500 (1981). We are not convinced that the efficient and equitable administration of this statutorily mandated right must yield to the logic of a general rule.
 
 V
 
 48
 Having decided upon the proper approach for partial pretrial settlements and bar orders, we must now determine whether the order issued by the district court in this case was proper.
 
 
 49
 The district court held a Rule 23 hearing fashioned on the requirements of California Code of Civil Procedure Sec. 877.6. Many courts have commented on the similarity between a Rule 23 hearing and hearing pursuant to section 877.6. E.g., In re United Energy Corp. Solar Power Modules Tax Shelter Investment Securities Litigation, Fed.Sec.L.Rep. (CCH) p 94,376, at 92,466 (C.D.Cal.1989); Kirkorian v. Borelli, 695 F.Supp. 446, 454 (N.D.Cal.1988). To that extent, the district court did not err.
 
 
 50
 The district court issued a bar order. As discussed above, that is resonant with the purposes of the securities laws.
 
 
 51
 The district court's order, however, fell short of the requirements we have discussed above. Although the district court's order limited nonsettling defendants' ability to seek further contribution from the settling defendants, it did not limit the subsequent exposure of the nonsettling defendants. The limit must be the nonsettling defendants' actual percentage of liability for the amount of total damages determined at trial.[19] Therefore, we remand the order to the district court so that, subject to the agreement of the settling parties, it may refashion its order as we have instructed.
 
 VI
 
 52
 Finally, Prudential-Bache argues that it is protected by certain contractual indemnity clauses. We have previously held that such clauses are invalid because they are against the policy of section 77k(f). Stewart v. American Int'l Oil & Gas Co., 845 F.2d 196, 200 (9th Cir.1988). The district court was correct in holding these clauses invalid.
 
 VII
 
 53
 The principles of compensation and contribution are in tension with the goals of full disclosure and settlement in actions under the securities laws. We believe that the most efficacious and equitable method of resolving this tension is by adopting a rule allowing only proportional liability if a contribution bar is entered as part of a pretrial partial settlement. In the absence of any guidance from Congress, such a rule becomes part of the federal common law.
 
 
 54
 The parties will bear their own costs on this appeal.
 
 
 55
 AFFIRMED in part, REMANDED in part.
 
 
 
 [1]
 Section 877 reads:
 Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
 (a) It shall not discharge any other such party to whom it is given from all liability for any contribution to any other parties.
 (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.
 (c) This section shall not apply to co-obligors who have expressly agreed in writing to an apportionment of liability for losses or claims among themselves.
 Section 877.6 provides:
 (a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing....
 (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.
 (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.
 (d) The party asserting the lack of good faith shall have the burden of proof on that issue.
 (e) When a determination of good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within such additional time not exceeding 20 days as the trial court may allow.
 
 
 [2]
 The settlement agreement reads:
 E. The Good Faith Hearing
 (i) Promptly after execution of this Stipulation, the parties hereto shall jointly move the Court for an order and judgment (the "Good Faith Order"), ... providing, inter alia, (a) that the settlement embodied in this Stipulation is entered into and made in good faith, within the meaning of Sections 877 and 877.6 of the California Code of Civil Procedure, and (b) that all claims for contribution or indemnification, however denominated, against the Settling Defendants arising under the federal securities laws or state law in favor of persons, including Non-Settling Defendants, who are asserted to be joint tort-feasors with the Settling Defendants in Settled Claims and based upon liability in the Settled Claims are extinguished, discharged, satisfied and/or otherwise unenforceable.
 
 
 [3]
 The Companies Act 1929 attached liability only to directors and persons who prepared the prospectus; section 11 of the Securities Act goes on to attach liability to underwriters. Dooley, The Effect of Civil Liability on Investment Banking and the New Issues Market, 58 Va.L.Rev. 776, 793 (1972)
 
 
 [4]
 The language is almost identical to that used in section 11(f):
 Every person who becomes liable to make payment under this [sub]section may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment.
 15 U.S.C. Sec. 78i; 15 U.S.C. Sec. 78r.
 
 
 [5]
 Nearly a hundred years after the Merryweather case was decided, and nearly one hundred years before our current decision, Professor Reath wrote:
 It is singularly unfortunate, and has led to misunderstanding, that Merryweather v. Nixan should have been continually treated as stating the "general rule." As a matter of fact, that case states not the rule, but the exception. The general rule is that among persons jointly liable the law implies an assumpsit either for indemnity or contribution, and the exception is that no assumpsit, either express or implied, will be enforced among wilful tort-feasors or wrongdoers.
 Reath, Contribution Between Persons Jointly Charged for Negligence--Merryweather v. Nixan, 12 Harv.L.Rev. 176, 177 (1898).
 
 
 [6]
 This came on the heels of England's Law Reform (Married Women and Tortfeasors) Act of 1935, 25 & 26 Geo. 5, ch. 30, Sec. 6, which abolished the rule against contribution
 
 
 [7]
 See ABA Antitrust Section, Contribution and Claim Reduction in Antitrust Litigation 6 & nn. 37-39 (1986) (listing sources of contribution rights in 39 states and District of Columbia)
 
 
 [8]
 The rule against contribution was not statutorily overridden in England until 1935. See supra note 6
 
 
 [9]
 In this case, for example, the section 877.6 good faith hearing has been thoroughly explicated by the California Supreme Court in Tech-Bilt, Inc. v. Woodward Clyde & Assocs., 38 Cal.3d 488, 698 P.2d 159, 213 Cal.Rptr. 256 (1985)
 
 
 [10]
 It is important to distinguish an action under the securities law from an action under, for example, civil rights laws. The Supreme Court has held that there can be no federal common law governing contribution in civil rights actions because there is no federal right to contribution in the first place. In securities law there is a statutorily created right to contribution; it is analogous to federal antitrust laws. However, because Congress has not yet created laws governing the right it created, the federal courts are free to fashion a common law. See Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638-646, 101 S.Ct. 2061, 2065-2070, 68 L.Ed.2d 500 (1981)
 
 
 [11]
 "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent on a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.' " United States v. Kimbell Foods, Inc., 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979) (quoting United States v. Standard Oil Co., 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947))
 
 
 [12]
 In Herzfeld v. Laventhol, Krekstein, Horwath & Horwath, the Second Circuit found that a settling defendant that paid more than its fair share in a partial settlement "removed itself from the category of a tort-feasor defendant" and was no longer subject to contribution. 540 F.2d 27, 38 (2d Cir.1976). As we explain later in this opinion, the scheme we now adopt would not require any proof of good faith beyond that required by Rule 23
 
 
 [13]
 The nonsettling defendants' argument also ignores the primary purpose of section 11(f), which is to punish every wrongdoer, and instead elevates a corollary of the purpose, which is that wrongdoers may seek contribution from one another
 
 
 [14]
 Unless, of course, the settlement amount is larger than the total amount of damages determined at trial
 
 
 [15]
 If the total amount of damages determined at trial is T, the settling defendants relative culpability is S, and the nonsettling defendants relative culpability is N, then S + N = T. T remains constant. Thus, if settling defendants pay any amount less than S, that amount must be added to the amount paid by nonsettling defendants. (S -x ) + (N + x ) = T
 
 
 [16]
 Settlements offer other benefits that might induce plaintiffs to accept smaller amounts
 Settlements are desirable, not just because trials are costly ... but because settlements allow parties to "manage their own disputes" and avoid the uncertainties and limitations of the winner-take-all, imposed decisions that courts make in fully litigated cases. Settlement also offers privacy to litigants and enables them to consider opportunities for resolutions that would not be available in a trial judgment.
 D. Provine, Settlement Strategies for Federal District Judges 1-2 (1986).
 
 
 [17]
 Borrowing the formula used in note 15, the jury will be required to find T = S + (N 1 + N 2 + N 3 ...) where S and N equal the parties' relative culpabilities
 
 
 [18]
 Those who argue that there is a fourth goal--making the plaintiffs whole--that is not met ignore the fact that the plaintiffs voluntarily settled. There are many reasons why plaintiffs would be wise to do so. See supra note 16. But see Fiss, Against Settlement, 93 Yale L.J. 1073 (1984)
 
 
 [19]
 Additionally, prevailing parties will be entitled to attorney's fees. Nonsettling defendants will not be liable for costs or fees solely attributable to legal services rendered by attorneys for plaintiffs or settling defendants in effecting a partial settlement