### In re WILSHIRE TECHNOLOGIES SECURITIES LITIGATION.

**Master File No. 94–0400–B (AJB).**

United States District Court,
S.D. California.

May 17, 1995.

Patrick J. Coughlin of Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, for plaintiffs.

Robert S. Stern of Morrison & Foerster, Los Angeles, CA, for Wilshire Technologies.

Timothy B. Taylor of Sheppard, Mullin, Richter & Hampton, San Diego, CA, for Cruttenden & Co., Inc.

ORDER OVERRULING OBJECTION OF DEFENDANT CRUTTENDEN & COMPANY TO JOINT LEGAL MEMORANDUM OF PLAINTIFFS AND WILSHIRE TECHNOLOGIES, INC. ON CONTRACTUAL INDEMNITY CLAIMS

BREWSTER, District Judge.

On May 8, 1995, the above captioned matter came on regularly for hearing before the Honorable Rudi M. Brewster. Patrick J. Coughlin, Esq. appeared on behalf of plaintiffs. Defendant Wilshire Technologies ("Wilshire") was represented by Robert S. Stern, Esq., and defendant Cruttenden & Company, Inc. ("Cruttenden") was represented by Timothy B. Taylor, Esq. After due consideration of the papers filed both in support of and in opposition to Cruttenden's objection to plaintiffs' and Wilshire's Joint Legal Memorandum on Contractual Indemnity Claims, as well as oral argument offered at the hearing, the Court hereby OVERRULES Cruttenden's objections.

## I. INTRODUCTION

This is a securities fraud action brought on behalf of all purchasers of stock in defendant Wilshire Technologies ("Wilshire") during the period between November 24, 1992 and March 14, 1994. On March 14, 1994, Wilshire announced that due to accounting improprieties, it was restating its previously reported 1993 profits and would instead report a massive loss. On March 28, 1994, Wilshire announced an unaudited loss of $4,532,000, or $.139 per share for fiscal 1993, as compared to the previously reported net earnings of $2,057,000, or $.54 a share announced on January 21, 1994.

As a result of the above events, a number of related actions were filed, and all have been consolidated before this Court. Among the numerous defendants named in the action are Cruttenden & Company, Inc. ("Cruttenden"), the managing underwriter for the initial public offering of Wilshire stock on November 24, 1992, and William Gibson ("Gibson"), an analyst employed by Cruttenden. The Complaint alleges that Cruttenden agreed to participate in the violations of the securities laws, and that Gibson was involved in the preparation of written reports and recommendations regarding the purchase of Wilshire stock.

On January 13, 1995, the parties stipulated to a dismissal of defendant Gibson without prejudice, and the Court entered an order thereon. On March 10, 1995, plaintiffs stipulated to a dismissal without prejudice of defendants Ernst & Young and Cruttenden, and the Court entered an order thereon.

On April 10, 1995, plaintiffs filed a motion for final approval of the settlement with Wilshire. In support of plaintiffs' motion for final approval of settlement, plaintiffs and Wilshire submitted a Joint Legal Memorandum Re Effect of Bar Order on Contractual Indemnity Claims. The hearing on the motion for final approval of settlement was originally scheduled for April 17, 1995. Howev-

er, on April 13, 1995, Cruttenden filed an objection to the Joint Legal Memorandum of Plaintiffs and Wilshire Technologies. The Court continued the hearing until May 8, 1995 to allow Cruttenden to brief fully its opposition to the bar order in the settlement between plaintiffs and Wilshire.

## II. DISCUSSION

Paragraph 12 of the Proposed Judgment between plaintiffs and Wilshire provides:

[u]pon the Effective Date, all claims for contribution or indemnification, however denominated, against the Settling Defendant arising under the federal securities laws or state law in favor of persons, including any Non–Settling Defendant, who are asserted to be joint tortfeasors with the Settling Defendant in the Released Claims, are hereby extinguished, discharged, and barred. In the event of a trial against the Non–Settling Defendants, its liability shall be limited in the manner set forth in *Franklin v. Kaypro Corp.*, 884 F.2d 1222 and other applicable case law.

Defendant Cruttenden opposes this bar order on the grounds of the Underwriting Agreement between Wilshire and Cruttenden, in which Wilshire agreed to

hold harmless each Underwriter against any losses, claims, damages or liabilities, joint or several, to which such Underwriter may become subject, under the Act or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any breach of any representation, warranty, agreement or covenant of the Company herein contained or any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement, any Preliminary Prospectus, the Prospectus, or any amendment or supplement thereto, or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading; and .. to reimburse each Underwriter for any legal or other expense reasonably incurred by it in connection with investigating or defending any such loss, claim, damage, liability or action ...

Plaintiffs stipulated to a dismissal without prejudice of defendants Gibson and Cruttenden on January 13, 1995 and March 10, 1995 respectively. Pursuant to the Underwriting Agreement above, Cruttenden now seeks from Wilshire reimbursement of its attorneys' fees in defending against the instant action—an amount now in excess of $95,000.

The leading Ninth Circuit authority on the effect of settlement bar orders is *Franklin v. Kaypro Corporation*, 884 F.2d 1222 (9th Cir. 1989), *cert. denied, Franklin v. Peat Marwick Main & Co.*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). *Kaypro* involved a federal securities class action against Kaypro Corporation, eight of its officers and directors, and Peat Marwick Main & Company and Prudential–Bache Securities, Inc. as underwriters of the stock issuance. The company and officers and directors settled and sought a "good faith" determination from the district court. The non-settling defendants, the underwriters, opposed the partial settlement.

On appeal, the Ninth Circuit adopted a "rule allowing only proportional liability if a contribution bar is entered as part of a pre-trial partial settlement." *Kaypro*, 884 F.2d at 1232. The Court elaborated:

[t]his scheme contemplates a partial settlement approved by the district court under Rule 23. Nonsettling defendants are then barred from further rights of contribution from the settling defendants. At trial, the jury is asked not only to determine the total dollar damage amount, but also the percentage of culpability of each of the nonsettling defendants as well as that of the settling defendants. Nonsettling defendants as a whole will then be required to pay the percentage of the total amount for which they are responsible. The nonsettling defendants will be jointly and severally liable for that percentage, and will continue to have rights of contribution against one another.

*Id.* at 1231. One of the non-settling underwriter defendants in *Kaypro*—Prudential–Bache—argued that it was protected by cer-

tain contractual indemnity clauses. The *Kaypro* court flatly rejected this argument, pointing out that the Ninth Circuit has previously held such clauses invalid as against the policy of section 77k(f). Thus, the court affirmed the district court's holding that these clauses were invalid. *Id.* at 1232.

The Court finds that *Kaypro* is directly on point and precludes Cruttenden's contractual indemnity claims against Wilshire. The *Kaypro* court explicitly held that the underwriter's contractual indemnity clauses in that case were invalid as against the policy of the securities laws. Cruttenden attempts to undermine *Kaypro*'s unambiguous holding with respect to contractual indemnity clauses by pointing out that "the *Kaypro* Court devoted exactly *one paragraph* to the contractual indemnity 'issue.'" Clearly, the fact that the Ninth Circuit addressed the issue in only one paragraph does not detract from its precedential value; even if the *Kaypro* court issued its ruling in one sentence—indeed, one word—it would still be binding on this Court.

Cruttenden attempts to distinguish *Kaypro* on two grounds. First, Cruttenden argues that it was dismissed from the action by stipulation with plaintiffs on March 10, 1995, and thus, technically, it is no longer a nonsettling defendant. Second, Cruttenden argues that it seeks to enforce only the defense costs portion of the indemnity agreement; Cruttenden does not seek indemnity from Wilshire for its own continuing exposure to liability for securities violations.

The Court does not find either distinction to be convincing. With respect to Cruttenden's dismissal from the case, plaintiffs stipulated to dismiss Cruttenden **without** prejudice. The stipulation explicitly provides that "if the Class files a new action against Cruttenden .. in connection with or arising out of the facts alleged in *In re Wilshire Technologies, Inc.* .. such action shall be deemed to have been filed as of August 8, 1994, provided such action is filed on or before March 16, 1996." The only reason the Court can discern why a bar order might be invalid as to a dismissed defendant even where it is perfectly valid against non-settling, non-dismissed defendants remaining in the case is that a dismissed defendant may not have an ade-

quate opportunity to be heard. However, in this case, Cruttenden has received notice of the motion for partial settlement, and the Court has afforded Cruttenden more than adequate opportunity to note its objection.

More importantly, the *Kaypro* court did not limit its holding in any way to apply only to indemnity clauses for continuing exposure to liability. There is simply no language in *Kaypro* supporting Cruttenden's contention that the case is inapplicable to requests for reimbursement of legal fees. To the contrary, if Cruttenden is entitled at all to reimbursement of legal fees, the claim for legal fees explicitly arises out of a contractual indemnity clause in the Underwriting Agreement, which *Kaypro* voids as contrary to public policy.

Seeking to avoid the effect of *Kaypro*, Cruttenden cites a host of non-Ninth Circuit cases and law review articles, none of which is directly on point. For example, in *Goldstein v. Alodex Corporation*, 409 F.Supp. 1201 (E.D.Pa.1976), two outside directors in a securities action filed cross-claims against the corporation seeking reimbursement of their legal fees in defending the action under Tennessee law and under the bylaws of the corporation. After the two directors were dismissed with prejudice from the action, they moved for summary judgment on their cross-claims for legal fees. The corporation did not oppose indemnification of the two directors' attorneys' fees, but asked the court to grant the relief requested only if under the bylaws and charter of the corporation such indemnification was permitted under the law of Tennessee. The court allowed the corporation to reimburse the two outside directors.

*Goldstein* does not address the applicability of bar orders to contractual indemnity claims. Cruttenden has not filed any cross-claims against Wilshire, and Cruttenden has not been dismissed from the action with prejudice. Finally, Tennessee law does not govern this case, and Wilshire opposes Cruttenden's request for reimbursement. For all these reasons, the Court finds *Kaypro* more applicable than *Goldstein*.

Cruttenden also relies on *Arden Way Associates v. Boesky*, 664 F.Supp. 863 (S.D.N.Y.

**240**

1987), in which the court rejected an argument that "as a matter of law indemnity is not available for securities law violations." 664 F.Supp. at 865. The court stated that this statement was "overbroad" and found that if the Partnership asserting the cross-claim for indemnification was liable at all for any securities violations, it would be by imputation of law. Because New York law permits implied indemnity, the court denied the motions to dismiss the Partnership's cross-claims for indemnity. *Arden Way* is inapplicable to the instant case because it does not address contractual claims for indemnity within the Ninth Circuit. Furthermore, even if New York law permits implied indemnity, Cruttenden concedes, as it must, that the Ninth Circuit does not.

Finally, Cruttenden's reliance on *Koch Industries v. Vosko*, 494 F.2d 713 (10th Cir. 1974), is misplaced. There, the court allowed an outside auditor in the securities action to recover costs and expenses of litigation. The court found that the claims for implied indemnification were not contrary to either Kansas law, federal securities law, or Bahamian law. However, the Ninth Circuit clearly does not allow such claims for implied indemnification. In light of the fact that the Ninth Circuit has already ruled on this issue, the Court finds *Kaypro* more persuasive than *Goldstein*, *Arden Way*, or *Koch Industries*.

### III. CONCLUSION

Good cause appearing, the Court hereby OVERRULES Cruttenden's objection to plaintiffs' and Wilshire's Joint Legal Memorandum on Contractual Indemnity Claims.

IT IS SO ORDERED.