Reinhold **FLUCK** and Cheryl Fluck, husband and wife; and Metro Direct Information Services of Phoenix, Inc., an Arizona corporation, Plaintiffs,

v.

Louise **BLEVINS**; Patrick M. Cox; Kevin Anderson; G.B. Conley; Steve Posey; Tim Timmons; Metro One Direct Information Services, Inc., an oregon corporation; Carl Peterson; Estate of James Tallman; and Tia Tallman–Brown, in her capacity as personal representative of the Estate of James Tallman, Defendants.

Civil No. 95–391–AS.

United States District Court, D. Oregon.

June 4, 1997.

John F. McGrory, Davis Wright Tremaine, Portland, OR, James E. Bartels, Meyer & Wyse, Portland, OR, Robert C. Van Voorhees, Neil Vincent Wake, Bryan Cave McPheeters & McRoberts, Phoenix, AZ, Steven Roger Herman, Phoenix, AZ, for plaintiffs.

Mark A. Turner, Ater Wynne Hewitt Dodson & Skerritt, Portland, OR, Tom Galbraith, Jeff Allen Shumway, Lewis & Roca, Phoenix, AZ, for defendants Patrick M. Cox, Kevin Anderson, Steve Posey, Tim Timmons.

Morton A. Winkel, Portland, OR, for defendant G.B. Conley.

Harding B. Cure, Timothy F. Bolden, O'Connor Cavanagh Anderson Westover Killingsworth & Beshears, Phoenix, AZ, David B. Wiles, Portland, OR, for defendants Estate of James Tallman, Tia Tallman-Brown.

## AMENDED [1] OPINION

ASHMANSKAS, United States Magistrate Judge.

■ At my request, the parties have submitted comments on my proposed methodology for crediting a partial settlement and the procedure used to determine whether the court should issue an order barring contribution claims against the settling defendants.

Plaintiffs object to using any formula except the proportionate liability method utilized in *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir.1989). Plaintiffs contend that *Kaypro* is still controlling authority, citing *Knapp v. Ernst & Whinney*, 90 F.3d 1431 (9th Cir.1996). However, *Knapp* does not support that contention. The opinion in *Knapp* was issued the day *before* a different Ninth Circuit panel issued its opinion in *DCD Programs, Ltd. v. Leighton*, 90 F.3d 1442 (9th Cir.1996). Consequently, the *Knapp* court had no reason to address the potential conflict between *DCD* and *Kaypro*. Moreover, the *Knapp* court expressly declined to consider whether the *Kaypro* rule was inconsistent with 15 U.S.C. § 78bb(a) because that argument was advanced for the first time on appeal. *Knapp*, 90 F.3d at 1436. This statute was prominently featured in the *DCD* decision issued the following day.

■ Plaintiffs also assert that § 201(a)(7) of the Private Securities Litigation Reform Act of 1995 does not apply to actions filed before December 22, 1995. The question is not whether § 201(a)(7) is controlling, but whether this court should adopt that rule on its own. I suggested this approach because of the inconsistent decisions reached by different Ninth Circuit panels, the criticisms that have been leveled at the various other methods of crediting partial settlements, and because the § 201(a)(7) methodology is a uniform approach that recently was adopted by Congress as its approved method. The other methodologies were judge-made rules that varied between circuits and even within cir-

---

1. The opinion filed on May 30, 1997, has been amended to clarify that I am borrowing only the settlement discharge provisions in paragraph (7) of Section 201(a) of the Private Securities Litigation Reform Act of 1995, P.L. 104–67 (1995). I make that distinction because, in addition to paragraph (7), Section 201(a) also contains various other provisions. It is not my intention to borrow Section 201(a) *in toto*.

**1242**

cuits. The parties have no vested interest in the *Kaypro* rule, nor any right to insist upon its strict application.

Plaintiffs also assert that "creating an *ad hoc* rule may create unnecessary conflict with the contribution rules of the states whose state law claims are before the court." However, plaintiffs have offered no specific examples of such a conflict. Moreover, any such conflict will necessarily result in all future cases that are governed by the 1995 Act. We may as well begin to address that problem now, since it will be with us for many years to come.

■ Plaintiffs contend that "since the non-settling defendants collectively are limited to their proportionate fault, they would not be prejudiced by the amount paid in any event." I disagree. The key word is "collectively." If the Tallman defendants are unable to pay their share of any judgment, then defendant Conley will be responsible for paying his own liability and also that of the Tallman defendants, but will be barred from seeking contribution from the settling defendants. Therefore, defendant Conley could be prejudiced by the agreement between plaintiffs and the settling defendants. A bar order is a judicially-created equitable device that issues at the discretion of the court and not as a matter of right. The probability that the order would result in inequity is a factor that the court must consider in deciding whether to issue such an order.

Plaintiffs contend that "if either defendant asserts insolvency, plaintiffs must be allowed full discovery on their financial situations in order to have a meaningful hearing on solvency ... [T]he court should order full and complete and voluntary disclosure of all financial information including tax returns, estate accountings, and interrogatory answers...." [2]

■ Doubts have been expressed about the ability of the Tallman defendants to pay any judgment that might be rendered against them, or at least about the ability of

defendant Conley to recover contribution from the Tallman estate, which is a slightly different issue but which yields the same result.[3] The solvency of the non-settling defendants is an issue for purposes of determining whether it is necessary to hold a fairness hearing. An inadequate settlement will not prejudice the rights of the non-settling defendants *unless* there is a serious risk that one or more of the non-settling defendants will be unable to pay its share of any judgment or to compel contribution from its fellow non-settling defendants.

The primary focus of the fairness hearing is upon the adequacy of the settlement from the perspective of the non-settling parties. The solvency of the non-settling defendants is a factor only to the extent it is necessary to determine whether the settling defendants are paying their fair share of any liability. For instance, if we assume (solely for the sake of argument) that the settling defendants are 40% liable, the Tallman defendants are 40% liable and Conley is 20% liable, the fair share of the settling defendants necessarily depends upon the solvency of the remaining defendants. If the Tallman defendants are insolvent, then Conley would be liable for the remaining 60% of the judgment and have no right of contribution against the settling defendants. For that reason, the settling defendants' fair share might be somewhat higher than 40%. By contrast, if the remaining defendants are solvent, then each would be liable only for its proportionate share of the judgment and there would be no need to conduct a fairness hearing. That assumes, of course, that Conley could obtain contribution from the Tallman Estate for any excess that he has paid.

The same result could be accomplished by an agreement not to execute any judgment against the non-settling defendants in excess of the proportionate liability of that particular defendant. If such an agreement were made, either on the parties' own initiative or by order of the court, it would eliminate the

---

**2.** The court questions whether it has the ability to "order ... voluntary disclosure."

**3.** Apparently, the deadline for filing claims against the estate has passed, and the non-set-

tling defendants believe this will bar the filing of any future claim for contribution. I express no opinion on that question since the issue is not presently before me.

need for "bogging down this settlement in a miniature trial before trial." The Tallman defendants would be liable for their proportionate share of any liability and Conley would be liable for his proportionate share. The solvency of other parties, the adequacy of other settlements and the ability to compel contribution from the Tallman Estate would all be moot issues. If the parties are interested in this proposal, they should promptly advise the court.

Otherwise, I will require the Tallman defendants to provide a sworn net worth statement. I will not permit extensive discovery on this topic unless the court has reason to question the accuracy of the net worth statement. Nor will I require defendant Conley to furnish a financial statement at this time since his solvency has not been questioned by the other non-settling defendants. The non-settling defendants should inform the court if they desire to conduct any discovery regarding the terms of the settlement or related issues, though it appears that most of this information already has been disclosed.

Admittedly the *Kaypro* method is simpler to administer, but it can result in manifest injustice when some of the non-settling defendants are insolvent. The court's equitable powers should not be used to perpetrate such an injustice.

The Tallman defendants have asked that any bar order be reciprocal, *i.e.*, that the settling defendants could not seek contribution from the non-settling defendants. None of the other parties have objected to that proposal and it would seem to be appropriate.

The Tallman defendants have also requested that the court value the settlement now. But for the necessity of conducting a fairness hearing, that task might be set aside for another day. Unfortunately, it is an essential element of any fairness hearing and—in the absence of an agreement limiting the proportionate liability of the non-settling defendants—it will be necessary to conduct such a hearing or the functional equivalent thereof. The court will set a scheduling con-

ference to discuss a timetable for this process.