*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0346P (6th Cir.)
File Name: 03a0346p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff,*

  v.

CONSOLIDATION COAL CO.;
TRIANGLE WIRE & CABLE,
INC.,
  *Third-Party*
  *Plaintiffs-Appellees,*

NEVILLE CHEMICAL CO.,
  *Third-Party*
  *Defendant-Appellant.*

No. 02-3308

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 94-00785; 94-00248—George C. Smith,
District Judge.

Argued: July 30, 2003

Decided and Filed: September 26, 2003

Before: DAUGHTREY and GILMAN, Circuit Judges;
CALDWELL, District Judge.*

———————————

**COUNSEL**

**ARGUED:** Neil G. Epstein, ECKERT, SEAMANS, CHERIN & MELLOTT, Philadelphia, Pennsylvania, for Appellant. Daniel M. Darragh, BUCHANAN INGERSOLL PROFESSIONAL CORPORATION, Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:** Neil G. Epstein, Carol L. Press, ECKERT, SEAMANS, CHERIN & MELLOTT, Philadelphia, Pennsylvania, Richard S. Wiedman, ECKERT, SEAMANS, CHERIN & MELLOTT, Pittsburgh, Pennsylvania, for Appellant. Daniel M. Darragh, BUCHANAN INGERSOLL PROFESSIONAL CORPORATION, Pittsburgh, Pennsylvania, Joseph D. Lonardo, VORYS, SATER, SEYMOUR & PEASE, Washington, D.C., for Appellees.

———————————

**OPINION**

———————————

MARTHA CRAIG DAUGHTREY, Circuit Judge. Third-party defendant Neville Chemical Company appeals a district court decision holding it liable for a portion of the past and future costs of cleanup at the Buckeye Reclamation Landfill in Belmont County, Ohio. The landfill has been on the National Priorities List as a Superfund site since 1983. Third-party plaintiffs Consolidation Coal Company (referred to throughout the record as Consol) and Triangle Wire & Cable,

———————————

*The Honorable Karen Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Inc., brought an action under § 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 (CERCLA), 42 U.S.C. §§ 9601 *et seq.*, seeking a declaration of liability and equitable allocation of response costs to Neville Chemical. Although the chemical company stipulated that it had deposited 472,000 gallons of wastewater sludge from its Pennsylvania treatment plant in the landfill between December 1978 and February 1979, Neville Chemical claims that the district court was unreasonable in imposing any of the cleanup costs on it because the wastewater caused no harm. The district court found Neville Chemical liable under CERCLA and determined its equitable share of past and future response costs for cleanup of the landfill to be 6%. *See United States v. Consolidation Coal Co.*, 184 F. Supp. 2d 723, 752 (S.D. Ohio 2002).

For the reasons set out below, we affirm the district court's decision as to liability and equitable share based on the reasoning in the district court opinion. However, as to the district court's calculation of prejudgment interest, awarded to Consol and Triangle Wire under 42 U.S.C. § 9607(a), we find it necessary to remand the case for further proceedings.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The record indicates that three different kinds of waste were deposited at the Buckeye Reclamation Landfill over the last seven decades. First, the landfill contains "gob," material left over from coal mining operations in the area from 1934 to 1954 and composed of coal, rock, clay, and other geological materials. The "gob" was left on the property before the area was a landfill. Second, the landfill contains industrial waste, which was disposed of primarily in a small area known as the "waste pit." The parties have stipulated the weight, type, and relative amount of the 45,000 tons of industrial waste that various entities deposited at the landfill from 1972 to 1980.

Neville Chemical's share was calculated to be 4.78%. Third, the landfill contains municipal waste, between 755,000 and 955,000 tons of which were disposed of at the landfill from 1970 to 1991. All three types of waste contain hazardous substances and contribute to the current need for cleanup.

After investigation by the Ohio Environmental Protection Agency (OEPA) and the United States Environmental Protection Agency (USEPA), the USEPA placed the landfill on the list of Superfund sites in September 1983. In December 1984, the USEPA notified a number of companies that it considered them potentially responsible parties (PRPs) and requested that the companies conduct a remedial investigation and feasibility study. Neville Chemical declined to participate, but the other companies worked with the USEPA to develop an administrative consent order that required a remedial investigation and feasibility study, as well as an endangerment assessment. After evaluating the results of the remedial investigation and feasibility study, the USEPA selected construction of a solid waste landfill cap as the appropriate remedy, at a cost of $48 million to $52 million. When the USEPA notified non-participating PRPs of their potential liability, a number of them began to participate in the remediation process that resulted in a second administrative consent order. Neville Chemical again declined to participate.

In 1994, Consol filed a complaint for declaratory judgment, in part to determine liability and allocation of costs under CERCLA, and the United States filed a complaint for the recovery of costs. The cases were consolidated and realigned so that the sole plaintiff in both cases was the United States. Ten of the defendant PRPs filed a third-party complaint for contribution against 64 third-party defendants, including Neville Chemical. During this time, the USEPA and the cooperating PRPs, including Consol and Triangle Wire, continued to negotiate modifications to the remediation plan.

Although invited to do so by the court, Neville Chemical once again declined to participate.

As a result of the negotiations, the USEPA modified its decision as to the chosen remediation for the site. The cost of the revised plan was estimated at $25 million, about one-half of the cost of the original plan. In March 1998, the court entered a consent decree between the United States and the cooperating PRPs providing for performance of the selected remediation at the landfill site. Consol, acting individually and on behalf of a number of other cooperating PRPs, and Triangle Wire continued to pursue their third-party action against Neville, seeking contribution under CERCLA's § 113.

After a long and detailed analysis, the district court ultimately ruled for Consol and Triangle Wire, determining that Neville Chemical was responsible for 6% of the past and future response cost of the Buckeye Reclamation Landfill. Neville appeals both the finding of liability and the allocation of a 6% equitable share.

## II. *STANDARD OF REVIEW*

A district court's allocation of response costs in a CERCLA contribution will not be set aside in the absence of a finding that the district court abused its discretion. *See United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 573 (6th Cir. 1991). "An abuse of discretion is found where we are left with the 'definite and firm conviction that the trial court committed a clear error of judgment.'" *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 274 F.3d 1043, 1047 (6th Cir. 2001) (*quoting Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

In addition, we set aside factual findings underlying the district court's allocation of response costs only if such findings are clearly erroneous. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 274 F.3d at 1047. "A factual finding

is clearly erroneous where, although there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.*, *quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

## III. *ANALYSIS*

### A. *Liability and Equitable Allocation*

The district court found that Neville Chemical was liable as a responsible party after articulating the purpose of CERCLA, *i.e.,* facilitating prompt cleanup of hazardous waste sites financed by those responsible for the hazardous waste, and based on the relevant statutory sections governing liability, §§ 107(a) and 113 (f)(1), 42 U.S.C. §§ 9607(a) and 9613(f)(1). Under those provisions, a party is liable in a contribution claim under § 113(f)(1) if it was liable or potentially liable under § 107(a). The court found Neville Chemical liable to Consol and Triangle Wire under the § 113 claim because all four elements necessary for § 107(a) liability were met: (1) the Buckeye Reclamation Landfill is a "facility" within the meaning of CERCLA; (2) a release of hazardous substance occurred there; (3) the release caused Consol and Triangle Wire to incur response costs; and (4) Neville Chemical falls into one of the four categories of PRPs listed in § 107(a). *See Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 653 (6th Cir. 2000). The district court did not abuse its discretion in finding Neville Chemical liable and, in fact, nowhere in its briefs does the chemical company contest the district court's conclusion of law that it meets all four elements of liability articulated in *Kalamazoo River Study Group* and §107(a).

The district court next recognized the broad discretion it had in making CERCLA contribution allocations using "such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). It discussed commonly used equitable

factors, including the six so-called "Gore factors" considered by Congress in enacting the law and the four "critical factors" identified by Judge Torre in *United States v. Davis*, 31 F. Supp.2d 45, 63 (D.R.I. 1998), *aff'd*, 261 F.3d 1 (1st Cir. 2001).[1] Neither of these lists is intended to be exhaustive or exclusive, and "in any given case, a court may consider several factors, a few factors, or only one determining factor . . . depending on the totality of the circumstances presented to the court." *See Environmental Trans. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 509 (7th Cir. 1992).

Although both Consol and Neville Chemical argued that the district court had to determine only Neville Chemical's equitable share, and not the share of any other PRP, the district court rejected that argument, reasoning that a fair and equitable allocation could only be achieved by comparing Neville's role as a PRP to other PRPs. The district court then divided the PRPs into four categories: generators and transporters of industrial waste; owners and operators of the landfill; Consol as the generator of the gob; and generators and transporters of the municipal solid waste. In allocating response costs, the district court focused primarily on the second "critical factor" from *Davis*, the PRP's varying levels

---

[1] *See, e.g., Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 354 (6th Cir. 1998) ((stating that "§ 113's equitable allocation provision allows the court to allocate costs equitably among PRPs considering the so-called 'Gore Factors'"); *United States v. Hercules, Inc.*, 247 F.3d 706, 718 (8th Cir. 2001) (recognizing that in making an equitable allocation of liability, "courts generally take into account the so-called 'Gore factors'"); *United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1 530, 1536 n. 5 (10th Cir. 1995). *See also* Robert P. Dahlquist, *Making Sense of Superfund Allocation Decisions: The Rough Justice of Negotiated and Litigated Allocations*, 31 Envtl. L. Rep. 11098, 11099 (2001) ("The Gore factors are most relevant in academic and theoretical analysis of the way Superfund liabilities should be allocated. But in the real world Judge Torre's list of four critical factors often provides the basis upon which Superfund allocations are made.").

of culpability, and two of the "Gore factors," the amount of waste and cooperation with the government, after carefully explaining why other factors were not helpful in deciding this particular case.

The court determined the equitable allocation across the four groups in the following way. First, the court assigned the industrial generators and transporters, including Neville Chemical, an equitable share of 60% of past and future costs, finding they were the most culpable. Their culpability arose from the fact that they knew or should have known, of the hazardous substances present in their waste, yet they disposed of their waste without seeking the permission required by the Belmont County Board of Commissioners. Second, the court assigned the owners and operators of the landfill a 25% equitable share of the response costs based on their lesser culpability, but also on their irresponsibility in not doing more to prevent the disposal of industrial wastes. Third, the court assigned Consol as generator of the "gob" a 10% equitable share, finding that Consol had knowledge that it contained hazardous substances, but recognizing at the same time that the material was deposited at the site between 1934 and 1952, at a time when there was nothing to prohibit such disposal. Finally, the court assigned the generators and transporters of municipal solid waste a 5% equitable share, because the group had little or no knowledge that the waste contained hazardous substances and because they were required to dispose of the waste at the landfill by rule of the Belmont County Board of Commissioners.

Within the 60% equitable share assigned to the industrial generators and transporters, the court used percentage weight of the waste as a fair and equitable way of determining individual shares. The parties stipulated that Neville Chemical was responsible for 4.78% of the industrial waste by percentage weight. The court rounded Neville's 4.78% share up to 5% based on the fact that Neville did not seek prior written approval of the Belmont County Board of

Commissioners, as the county regulations required it to do. Triangle Wire is the only industrial generator which did seek prior approval, and the court found that this fact made that company marginally less culpable than its percentage weight would reflect. By rounding up Neville Chemical's individual share and decreasing Triangle Wire's share, the district court adjusted for Neville Chemical's violation of applicable local regulation and Triangle Wire's compliance. Thus, at this point in the court's analysis, Neville Chemical had an individual share of 5% of 60%, or 3%, of the past and future response costs.

The court considered one additional equitable factor in its analysis: cooperation with the government. The court concluded that Neville Chemical did not cooperate with the OEPA or the USEPA and that it did not participate in any efforts of the other PRPs to work with the government to investigate the site, design a remedy, abide by the remedy. In sum, the district court found that "Neville did not meaningfully cooperate in any phase of the CERCLA process in this case, although it was given ample opportunity to do so." Because of this "persistent, pervasive, and unjustified" lack of cooperation when Neville Chemical knew or should have known that its sludge had been deposited at the site, the court doubled the company's share of response costs from 3% to 6%. The court also noted that because the cooperating PRPs had negotiated a remedy that was half the cost of the originally approved remedy, doubling Neville Chemical's individual share would avoid the possibility of a windfall to that company, based on the successful efforts of the cooperating PRPs to find a less costly solution.

Neville Chemical argues on appeal that the district court abused its discretion in this allocation of chemical costs, given the opinion of Neville Chemical's expert that the company's waste caused no harm. However, the district court found the opinion of the expert unreliable because it was not

based on conditions similar to those that existed in the waste pit.

Neville Chemical also argues that the district court abused its direction in allocating 60% of the response costs to the industrial generators and 5% that share to Neville Chemical. Finally, the company argues that the district court abused its discretion in doubling Neville Chemical's share from 3% to 6%. However, all these arguments boil down to a disagreement with the particular equitable factors the district court chose to use and how the court applied them. After an independent review, we conclude that nothing in Neville's arguments leads us to a "definite and firm conviction that the trial court committed a clear error of judgment." *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 274 F.3d at 1047.

B.  *Prejudgment Interest*

We do, however, conclude that the district court failed to comply with a statutory requirement in awarding prejudgment interest to Consol and Triangle Wire. The court calculated the award at $298,750, based on past response costs beginning in 1986, which is apparently when such costs were first incurred at the site.

An award of prejudgment interest is provided for in CERCLA § 107(a), 42 U.S.C. § 9607(a), and is mandatory. *See United States v. Township of Brighton*, 153 F.3d 307, 321 (6th Cir. 1998) (finding prejudgment interest is mandatary in a § 107 action); *Allied Signal, Inc. v. Amcast Int'l Corp.*, 177 F. Supp. 2d 7813, 757-58 (S.D. Ohio 2001) (reasoning that prejudgment interest must be awarded to a party seeking contribution under § 113(f) in the same manner that it would be awarded to a party bringing a cost recovery action under § 107(a), because an action under § 113(f) is governed by the requirements of § 107(a)). The statute specifies exactly when it begins to accrue, that being "the later of (i) the date payment of a specified amount is demanded in writing, or

(ii) the date of the expenditure concerned." 42 U.S.C. § 9607(a).

Hence, as applied to this case, the statute requires that interest be calculated from the later of two dates: the date on which Neville Chemical's payment of a specific amount was demanded in writing *or* the date on which the expenditure occurred. The district court appears to have calculated the prejudgment interest based solely on when the expenditure actually occurred, without regard to the statute's directive that it be based on the later occurring of the two dates. Although Consol and Triangle Wire began incurring response costs in 1986, there is no evidence, nor did the district court make a finding, as to when they made a written demand for a specified sum from Neville Chemical.

Consol and Triangle Wire argue that a letter written on behalf of the Buckeye Reclamation Landfill Steering Committee on February 21, 1986, constituted a written "demand letter." However, to call this letter a "demand letter" for a specified sum is a clear mischaracterization of the document, because the letter simply invited Neville Chemical to join the group of cooperating PRPs to participate in the investigation of the landfill and informed the chemical company of the time and place of the group's next meeting. The district court did not refer to this letter in awarding prejudgment interest, and we decline to rely on it as a basis for the award.

In the alternative, Consol argues that the third-party complaint constitutes the written demand of a specified sum because it alleged that the cost of the remedy was over $47 million. But this third-party complaint was brought against 59 third-party defendants, as well as various unidentified parties, and did nothing to specify the amount being demanded from each of the third-party defendants. Although other circuits have found that a complaint can meet the statutory written demand requirement, *see Bancamerica*

*Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 100 F.3d 792, 801 (10th Cir. 1996); *In re Bell Petroleum Servs., Inc.*, 3 F.3d 89, 908 (5th Cir. 1993), we cannot say that the complaint in this case satisfies the statutory prerequisite for an award of prejudgment interest, because it is not sufficiently specific.

We therefore conclude that the district court erred as a matter of law in calculating the amount of prejudgment interest owed by Neville Chemical without making a finding regarding *when* the statutory prerequisites to prejudgment interest were met. It follows that the calculation of prejudgment interest contained in the judgment cannot be sustained in the absence of a further determination under § 107(a).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court as to Neville Chemical Company's liability and its individual share of past and future response costs, based on our holding that the district court did not abuse its discretion in equitably allocating those costs.

We further VACATE the award of prejudgment interest and REMAND the case to the district court for a recalculation of the prejudgment-interest award consistent with this opinion.