**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERIPRIDE SERVICES INC., a Delaware Corporation, *Plaintiff-Appellee*, <br><br> v. <br><br> TEXAS EASTERN OVERSEAS INC., a Delaware Corporation dissolved, *Defendant-Appellant*. | No. 12-17245 <br><br> D.C. No. 2:00-cv-00113-LKK-JFM <br><br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
November 20, 2014—San Francisco, California

Filed April 2, 2015

Before: Ferdinand F. Fernandez and Sandra S. Ikuta,
Circuit Judges, and William H. Albritton III, Senior
District Judge.[*]

Opinion by Judge Ikuta

---

[*] The Honorable William H. Albritton III, Senior District Judge for the U.S. District Court for the Middle District of Alabama, sitting by designation.

## SUMMARY[**]

### Environmental Law

The panel vacated the district court's judgment after trial in a contribution action under the Comprehensive Environmental Response, Compensation, and Liability Act arising out of the contamination of the soil and groundwater in an industrial area of Sacramento, California.

Agreeing with the First Circuit, and declining to follow the reasoning of the Seventh Circuit, the panel held that in allocating liability to a nonsettling defendant in a CERCLA contribution action, the district court is not required to apply either the proportionate share approach of the Uniform Comparative Fault Act or the pro tanto approach of the Uniform Contribution Among Tortfeasors Act, but rather has discretion to determine the most equitable method of accounting for settlements between private parties. The panel held that because the district court first ruled that it was adopting the proportionate share approach but later, at trial, effectively applied the pro tanto approach, and did not explain its methodology for complying with CERCLA § 9613(f) and furthering the goals of CERCLA, the panel could not determine whether the district court abused its discretion in allocating response costs (costs of cleanup of contaminated soil and groundwater). Accordingly, the panel remanded the case to the district court for further proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Consistent with the Tenth Circuit, the panel held that a party can seek contribution under § 9613(f)(1) only for settlement costs that were for necessary response costs consistent with the national contingency plan, a plan promulgated by the federal government to guide federal and state response actions. Accordingly, the district court erred in failing to determine the extent to which costs were incurred consistent with the plan. The panel held that the district court also erred in setting the date on which prejudgment interest began to accrue and in assigning causes of action pursuant to Cal. Civ. Proc. Code § 708.510.

## COUNSEL

Fred M. Blum (argued) and Erin K. Poppler, Bassi Edlin Huie & Blum LLP, San Francisco, California; Ronald Bushner, Wilson, Elser, Moskowitz, Edelman, & Dicker LLP, San Francisco, California, for Defendant-Appellant.

Philip C. Hunsucker (argued), Brian L. Zagon, Maureen B. Hodson, and Marc A. Shapp, Hunsucker Goodstein PC, Lafayette, California; Lee N. Smith, Weintraub Tobin Chediak Coleman Grodin Law Corporation, Sacramento, California, for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

This appeal requires us to determine whether the district court erred in calculating and allocating liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9607(a) and 9613(f), in AmeriPride Services Inc.'s contribution action against Texas Eastern Overseas, Inc. (TEO). TEO challenges (1) the district court's method of allocating liability among settling and nonsettling parties; (2) its determination that AmeriPride could recover costs that were not "necessary costs of response incurred . . . consistent with the national contingency plan," § 9607(a)(B);[1] (3) its selection of the date prejudgment interest started accruing based on equitable factors, rather than on the accrual dates specified in § 9607(a); and (4) its assignment of TEO's causes of action against its insurers to AmeriPride. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we vacate the district court's judgment and remand for further proceedings.

I

We begin by reviewing the statutory framework applicable to this appeal. CERCLA, 42 U.S.C. §§ 9601–9675, is a statutory scheme giving the federal government broad authority to require responsible parties to clean up contaminated soil and groundwater. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994). Section

---

[1] Because each of the lettered subparagraphs in § 9607(a) applies to each of the numbered subparagraphs, we refer to the four lettered subparagraphs as subdivisions of § 9607(a) itself.

9607(a) states that any enumerated responsible party, including any person who is a current owner or operator of contaminated property, is liable for "any . . . necessary costs of response incurred by any other person consistent with the national contingency plan."     42 U.S.C. § 9607(a)(B).[2] "Response" costs are limited to cleanup, enforcement, and related security costs.  42 U.S.C. § 9601(23)–(25).  The national contingency plan (NCP) is a national plan promulgated by the federal government to guide federal and state response actions.  42 U.S.C. § 9605; 40 C.F.R. pt. 300 (publishing the NCP).  A private person (someone who is not the United States, a state, or a tribe) who has incurred

---

[2] 42 U.S.C. § 9607(a) provides in pertinent part:

> (a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section— [persons specified in (a)(1)–(4)] shall be liable for—

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

> . . . . The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. . . . .

"necessary costs of response" that are consistent with the NCP, 42 U.S.C. § 9607(a)(B), may bring an action to recover such costs, including "interest on the amounts recoverable." § 9607(a).

In addition to allowing private parties to sue for cost recovery under § 9607(a), CERCLA also authorizes a responsible party who has incurred liability under § 9607(a) to bring an action for contribution under § 9613(f)(1) against any other potentially responsible party.[3] "Contribution" is not defined in CERCLA, but is interpreted to mean "the tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (internal quotation marks omitted). "In resolving contribution claims, the court may allocate

---

[3] 42 U.S.C. § 9613(f)(1) provides:

(1) Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

response costs among liable parties using such equitable factors as the court determines are appropriate." § 9613(f)(1). CERCLA does not limit the equitable factors a court may consider.

II

We now turn to the facts of this case. This action arose out of the contamination of the soil and groundwater in an industrial area of Sacramento, California. Valley Industrial Services, Inc. (VIS) operated an industrial dry cleaning and laundry business at that site for seventeen years. VIS used perchloroethylene (PCE) as a solvent in its dry cleaning operations. PCE is designated as a "hazardous substance" under CERCLA. 42 U.S.C. § 9602; 40 C.F.R. § 302.4. During its operations, VIS released PCE into the environment. VIS eventually merged into TEO, which expressly assumed VIS's liabilities.

VIS was a wholly owned subsidiary of Petrolane, Inc. during part of the time it was operating at the Sacramento site. In 1983, Petrolane sold the Sacramento site; the property passed through various hands until AmeriPride became the owner. During AmeriPride's ownership, there were additional releases of PCE-contaminated water into the soil and groundwater. The contamination at the Sacramento site migrated onto a neighboring property owned by Huhtamaki Foodservices, Inc. (Huhtamaki), and contaminated groundwater wells owned by California-American Water Company (Cal-Am). Chromalloy American Corporation, which owned property in the vicinity of the Sacramento site, also released hazardous substances that contributed to the contamination on AmeriPride's property.

AmeriPride's environmental consultant found evidence of PCE in the soil under the Sacramento site during a remodel in 1997. AmeriPride reported its discovery to regulatory authorities, and a state agency directed AmeriPride to conduct additional sampling and install monitor wells. In 2002, after AmeriPride had conducted the additional sampling and monitoring, the state agency took regulatory control over the Sacramento site investigation. Since then, AmeriPride has performed investigation and remediation of the PCE in the soil and groundwater at and near the Sacramento site under the direction of the state agency. The cleanup is ongoing.

In January 2000, AmeriPride filed a complaint in district court against VIS, Petrolane, TEO, and Chromalloy under 42 U.S.C. §§ 9607(a) and 9613, seeking to recover costs it incurred responding to the PCE contamination. TEO asserted a counterclaim for contribution under § 9613(f). AmeriPride subsequently entered into settlement agreements with Chromalloy and Petrolane, for $500,000 and $2.75 million respectively.

Both Cal-Am and Huhtamaki subsequently brought suit against AmeriPride. In July 2002, Cal-Am filed a complaint against AmeriPride seeking recovery of its response costs, damages, and other relief in connection with the contamination of its wells. AmeriPride paid Cal-Am $2 million to settle these claims. In the settlement agreement, Cal-Am agreed to release AmeriPride from all claims arising out of or related to the "interference with, or destruction or loss of use of" either Cal-Am's wells or the parcels of real property on which the wells were located. In July 2004, Huhtamaki filed a complaint against AmeriPride seeking cost recovery under CERCLA and state law, and asserting common law causes of action for nuisance, trespass, and

negligence.  AmeriPride paid Huhtamaki $8.25 million to settle Huhtamaki's claims.  In the settlement agreement, AmeriPride and Huhtamaki mutually agreed to release each other from all charges or damages related to or arising from the claims asserted in Huhtamaki's complaint, "including . . . the costs of replacement water claimed by Huhtamaki."

The district court approved AmeriPride's settlement agreements in July 2007 in an order entering judgment under Federal Rule of Civil Procedure 54(b).  In its order, the court noted that federal courts in California approving settlements involving CERCLA have adopted section 6 of the Uniform Comparative Fault Act as federal common law to determine how the settlement of one or more parties will impact the nonsettling parties, and stated that "[t]his Court does the same here."   It then held that "Section 6 of the Uniform Comparative Fault Act ('UCFA') . . . in pertinent part, is hereby adopted as the federal common law in this case for the purpose of determining the legal effect of the settlement agreements."

Meanwhile, litigation between AmeriPride and TEO continued.  On January 7, 2011, AmeriPride filed a motion for summary judgment against TEO seeking, among other things, an order holding TEO liable to AmeriPride under 42 U.S.C. § 9607(a) for its response costs, including the amounts paid in settlement to Cal-Am and Huhtamaki. AmeriPride also moved to dismiss TEO's counterclaim under 42 U.S.C. § 9613(f) for contribution.

In an order dated May 12, 2011, the court ruled that TEO was liable for AmeriPride's response costs under § 9607(a) as a matter of law.  Next, the court held that the amounts AmeriPride paid in settlement to Cal-Am and Huhtamaki

were not recoverable under § 9607(a), but permitted AmeriPride to file an amended complaint seeking to recover these amounts under § 9613(f).[4]  In light of this ruling, the court did not address whether those amounts were necessary response costs that had been incurred consistent with the NCP, though it held that AmeriPride's other response costs met that criterion.  The district court concluded that triable questions of fact remained regarding a number of other issues, including the equitable allocation of response costs between TEO and AmeriPride under § 9613(f).  The district court therefore set a date for a bench trial to resolve these remaining issues.

Before trial, TEO moved the court for an order reasserting its previous ruling that the UCFA proportionate share approach would apply to determine the effect of AmeriPride's settlements with Chromalloy and Petrolane.  At the hearing on its motion, TEO explained that under section 6 of the UCFA, the court had to calculate the amount of Chromalloy's and Petrolane's equitable shares of the response costs, and reduce AmeriPride's claims against TEO by that amount.  The district court denied this motion.  The court indicated that it would use equitable factors to allocate response costs between AmeriPride and TEO, but that the liability of the settling parties "is measured by the settlement that the court found fair and reasonable."  Accordingly, the court held that it would reduce AmeriPride's claims against TEO only by the dollar value of Chromalloy's and Petrolane's settlements.

In its motion in limine, TEO also asked for an order requiring AmeriPride to prove that its settlements with Huhtamaki and Cal-Am were for necessary costs of response

---

[4] AmeriPride filed such an amended complaint on May 24, 2011.

incurred consistent with the NCP. The court denied this motion as well, mistakenly stating that it had resolved this issue in its May 12, 2011 order, and agreeing with AmeriPride that because the response action at the Sacramento site was NCP compliant, it did not need to make an individual determination regarding whether the settlement with Cal-Am and Huhtamaki met that criterion.

After a bench trial, the district court entered a final order and judgment against TEO. First, the district court found that $15,508,912 was the amount of AmeriPride's damages subject to equitable apportionment. The court reached this number by taking several steps. It first totaled all of AmeriPride's response costs, including its investigation, remediation, and regulatory oversight costs. The court added this sum to the amounts AmeriPride paid to settle Huhtamaki and Cal-Am's claims, and rejected TEO's argument that it must first determine the extent to which these payments were for necessary response costs incurred consistent with the NCP. AmeriPride's response costs and settlement costs together totaled $18,758,912. The court then deducted $3.25 million to account for the money AmeriPride received from settling its claims with Chromalloy and Petrolane.

Second, the district court apportioned the $15,508,912 amount equally between AmeriPride and TEO, resulting in each party being responsible for $7,754,456. Because AmeriPride had been bearing the costs of response for many years, the court held that TEO would also be responsible for prejudgment interest, accruing from the date the costs were incurred by AmeriPride. The court rejected TEO's argument that such interest did not begin to accrue until the date AmeriPride demanded payment of a specified amount in

writing, *see* § 9607(a)(i), stating that the interest accrual date was "a matter of equity rather than statutory requisites."

After the district court entered its judgment, TEO filed a renewed motion for judgment as a matter of law and moved to amend or alter the judgment.  AmeriPride moved for an order directing TEO to assign its causes of action against its insurers to AmeriPride.  The district court denied TEO's motions and granted AmeriPride's.  TEO timely appealed the district court's judgment.

III

We review the district court's interpretation of a statute de novo.  *See Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1182 (9th Cir. 2000).  When interpreting a statute, "[o]ur task is to construe what Congress has enacted."  *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (en banc) (alteration in original).  "[W]e look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress."  *Id.* (alteration in original) (internal quotation marks omitted).

We begin with TEO's argument that although the district court properly recognized that TEO was entitled to a credit for AmeriPride's settlements with Huhtamaki and Cal-Am, it applied the wrong method to determine how that credit should be determined.  This claim first requires an understanding of the two leading methods for allocating liability to a nonsettling defendant after other responsible parties have entered into a settlement agreement to resolve their responsibility for an injury.

A

When a statute does not provide an approach for determining how to credit settlements in cases involving settlements with less than all the jointly and severally liable tortfeasors, courts generally look to either the Uniform Contribution Among Tortfeasors Act (UCATA), sometimes referred to as the pro tanto approach, or the Uniform Comparative Fault Act (UCFA), sometimes referred to as the proportionate share approach. *See, e.g.*, *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208–09 & n.8, 217 (1994). The UCATA and the UCFA are model acts proposed by the National Conference of Commissioners on Uniform State Laws that advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability. *See id.* at 209 n.8.

The UCFA, which takes the proportionate share approach, provides that when an injured party settles with one of multiple tortfeasors, the settlement does not discharge the nonsettling tortfeasors but reduces the injured party's claims against them by the amount of the settling tortfeasor's proportionate share of the damages. *See* UCFA § 6.[5] Courts

---

[5] Uniform Comparative Fault Act § 6 states:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

adopting the UCFA proportionate share approach must therefore "determine the responsibility of all firms that have settled, as well as those still involved in the litigation." *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 20 (1st Cir. 2004) (internal quotation marks omitted).   The nonsettling tortfeasors will be responsible only for their proportionate share of the costs, even if the settling tortfeasor settles for less than its fair share of the injury.   Under this approach, an injured party who settles for too little may not receive full recovery.   The district court in this case expressly adopted the UCFA proportionate share approach in its July 2, 2007 order approving the settlement agreements between AmeriPride and the settling defendants, Chromalloy and Petrolane.

The UCATA pro tanto approach provides that when an injured party settles with one of two or more tortfeasors for the same injury, the settlement does not discharge the nonsettling tortfeasors but reduces the injured party's claims against them by the dollar value of the settlement.   *See* UCATA (Revised) § 4(a) (1955).[6]   If the settling tortfeasor

---

[6] Uniform Contribution Among Tortfeasors Act § 4 provides:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

settles for less than its proportionate share of the injury, the nonsettling tortfeasors will end up paying more than their proportionate share.  While this approach encourages early settlement, *see McDermott*, 511 U.S. at 214–15, it also gives rise to a potential for unfairness or collusive settlements, *see Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1230 (9th Cir. 1989).  To remedy this concern, courts and legislatures adopting the UCATA pro tanto approach for resolving state tort claims or pursuant to statute often require "good-faith hearings" before approving a settlement.  *McDermott*, 511 U.S. at 213.  "When such hearings are required, the settling defendant is protected against contribution actions only if it shows that the settlement is a fair forecast of its equitable share of the judgment." *Id.*

Despite having previously adopted the UCFA proportionate share approach, the district court concluded at a motion in limine hearing that it would not determine the proportionate share of the damages attributable to Chromalloy and Petrolane.  Instead, it held it would reduce the amount of AmeriPride's claim by the dollar amount paid by Chromalloy and Petrolane, the settling defendants.

B

TEO argues that CERCLA requires that courts apply the UCFA proportionate share approach to determine how to credit settlements in cases involving private settlements with less than all the potentially responsible parties.

---

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

We have generally favored the UCFA proportionate share approach when construing federal statutes that authorize contribution but are silent regarding how liability should be allocated to nonsettling defendants.  *See Franklin*, 884 F.2d at 1231–32 (9th Cir. 1989); *see also In re Exxon Valdez*, 229 F.3d 790, 798 (9th Cir. 2000).

In *Franklin*, we considered how courts should allocate liability to nonsettling defendants in the context of a settlement in a securities case brought pursuant to section 11(f) of the Securities Act of 1933, 15 U.S.C. § 77k(f).[7]  884 F.2d at 1225–26.  We noted that while § 77k(f) provided that defendants could recover contribution from other liable parties, it did not provide any guidance for partial settlements. *Id.* at 1228.  Given that settlements in securities cases "affect substantive rights that are the province of federal courts," we concluded it was necessary to develop federal common law on this issue, and considered various approaches.  *Id.* at 1228–29.  We declined to hold that federal courts should adopt the contribution law of the forum state.  *Id.* at 1228. We also rejected the UCATA pro tanto approach.  *Id.* at 1230–31.    Ultimately, we concluded that the UCFA proportionate share approach was preferable, noting that "[t]he principles of compensation and contribution are in tension with the goals of full disclosure and settlement in

---

[7] Section 77k(f)(1) provides:

> [E]very person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.

actions under the securities laws," and "the most efficacious and equitable method of resolving this tension is by adopting a rule allowing only proportional liability if a contribution bar is entered as part of a pretrial partial settlement." *Id.* at 1232. Accordingly, we concluded that "[i]n the absence of any guidance from Congress, such a rule becomes part of the federal common law." *Id.*

In a subsequent case, we held that the district court abused its discretion when it refused to enforce an agreement between settling parties designed to obtain the "functional equivalent of a proportionate share allocation of damages" because "[t]he proportionate share approach is the law in the Ninth Circuit" and both the Ninth Circuit and the Supreme Court have "endorsed" the proportionate share approach in other contexts due to "its superiority in blending fairness to the parties with incentives to settle." *In re Exxon Valdez*, 229 F.3d at 797–98.

The Supreme Court has likewise favored the UCFA proportionate share approach in federal admiralty law. *See McDermott*, 511 U.S. at 217. In *McDermott*, the Supreme Court reasoned that the UCFA proportionate share approach was "superior" to the UCATA pro tanto approach in admiralty because it was consistent with the rule that damages in an admiralty suit be assessed on the basis of proportionate fault. *Id.* at 211, 217.

Despite this precedent, we cannot read federal common law into a statute if we determine it is contrary to congressional intent. *See Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 856 (9th Cir. 2012) ("Federal common law is subject to the paramount authority of Congress.") (citing *New Jersey v. New York*, 283 U.S. 336,

348 (1931)); *see also United States v. Northrop Corp.*, 59 F.3d 953, 958 (9th Cir. 1995) ("Even if federal common law otherwise would operate, it is displaced when Congress has decided the matter.")  Accordingly, before applying federal common law, we must first interpret the statute and attempt to ascertain congressional intent to determine if Congress has decided the matter.  *See Northrop*, 59 F.3d at 958.  In the CERCLA context, "[a]lthough we presume the application of well-established common law principles to a federal statute, this presumption does not apply 'when a statutory purpose to the contrary is evident.'" *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 958 (9th Cir. 2013) (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993)).  "Congress need not 'affirmatively proscribe' the common law principle to evince this intent." *Id*.  Rather, congressional intent can be inferred from the statutory text, the structure of the statute and the relationship between its provisions, and "CERCLA's overall statutory purpose." *See id.* at 960–61.

Here, there are strong indications that Congress did not intend to require district courts to apply the UCFA proportionate share approach in cases involving litigation among private parties.  CERCLA specifies an approach for allocating liability to a nonsettling defendant in one circumstance only: when the federal or state government has incurred recoverable response costs and enters into a settlement agreement.  *See* § 9613(f)(2).  Section 9613(f)(2) provides that a settlement agreement between the state or federal government and one responsible party, "reduces the potential liability of the others by the amount of the settlement," i.e., it requires the UCATA pro tanto approach. By contrast, CERCLA does not specify how a settlement agreement between two private parties affects the liability of

nonsettling parties.  *See* § 9613(f).  The requirement that courts apply the UCATA pro tanto approach for government settlements in § 9613(f)(2), and the lack of any such a requirement in private party settlements, leads to the conclusion that Congress did not intend to impose a uniform requirement for a particular approach in private party settlements.  *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alterations in original) (internal quotation marks omitted); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176–77 (1994) (concluding that Congress did not intend to impose aiding and abetting liability under the Securities Act of 1934 where the plain language of the statute did not impose such liability, yet other statutes showed that "Congress knew how to impose aiding and abetting liability when it chose to do so").  CERCLA's statutory language is best read as leaving the allocation of liability among responsible parties to be guided by § 9613(f)(1)'s more general principle that "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Such flexibility would further one of CERCLA's core purposes of "foster[ing] settlement through its system of incentives and without unnecessarily further complicating already complicated litigation."  *Chubb Custom*, 710 F.3d at 971 (internal quotation marks omitted).

In light of CERCLA's statutory scheme, neither *Franklin* nor *McDermott* is applicable.  *Franklin* held that the "statutorily created right to contribution" in § 77k(f)(1) left courts "free to fashion a common law" because Congress had

not "created laws governing the right it created." 884 F.2d at 1228 n. 10.  Moreover, in adopting the UCFA proportionate share approach, *Franklin* focused on the policy goals of the securities law, noting the "statutory goal of punishing each wrongdoer." *Id.* at 1231.  In CERCLA, by contrast, the statutory text and "CERCLA's overall statutory purpose," *Chubb*, 710 F.3d at 961, weigh against adopting the UCFA proportionate share approach as a matter of federal common law.  Congress required the use of the UCATA pro tanto approach in cases involving settlements between a private party and the government, but otherwise granted courts discretion to allocate response costs among liable parties. *See* § 9613(f)(1)–(2).  Further, Congress's preference for the UCATA pro tanto approach in government settlements weighs against mandating a single different approach in the private party context. *Cf. Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 308 (7th Cir. 1999) (adopting the UCATA pro tanto approach for private party settlements to be consistent with Congress's adoption of this approach in § 9613(f)(2)).  Nor do CERCLA's policy goals fully coincide with the policy goals identified in *Franklin* for securities law.  Although CERCLA has a "secondary purpose" of "assuring that 'responsible' persons pay for the cleanup," its focus is on protecting the public health and environment "by facilitating the expeditious and efficient cleanup of hazardous waste sites." *Carson Harbor*, 270 F.3d at 880.  Because the UCFA proportionate share approach does not promote early settlement to the same extent as the UCATA pro tanto approach, it may not be the best approach for furthering the goals of CERCLA in all cases.

Nor is *McDermott* controlling.  In *McDermott*, the Supreme Court concluded that the UCFA proportionate share approach was "superior" to the UCATA pro tanto approach

in admiralty because it was consistent with the rule that damages in an admiralty suit be assessed on the basis of proportionate fault. *See* 511 U.S. at 207, 217. CERCLA has no similar rule. Rather, we have recognized that CERCLA contemplates that responsible parties who fail to enter into an early settlement agreement "'may ultimately bear a disproportionate share of the CERCLA liability.'" *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 875 (9th Cir. 2014).

Accordingly, we reject TEO's argument that because CERCLA does not specify how to allocate liability to nonsettling parties in litigation between two private parties, we must apply the UCFA proportionate share approach. Instead, we conclude that a district court has discretion under § 9613(f)(1) to determine the most equitable method of accounting for settlements between private parties in a contribution action. In reaching this conclusion, we concur with the well-reasoned approach of the First Circuit. *See Capuano*, 381 F.3d at 20–21 (concluding that § 9613(f)(1) gives district courts discretion to determine "the most equitable method of accounting for settling parties" in private-party contribution actions).[8] For the same reason, we decline to follow the reasoning of the Seventh Circuit, which held that CERCLA requires courts to use the UCATA pro tanto approach in every case. *See Akzo*, 197 F.3d at 308. *Akzo* concluded that language in the statute providing that

---

[8] The Tenth Circuit has also suggested that district courts have discretion to determine which method of accounting to apply in private-party contribution actions. *See Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 897 (10th Cir. 2000) (holding that the district court was not obligated to reduce the nonsettling party's liability by the settlement amount, and was permitted to reduce the nonsettling party's liability by the settling party's equitable share of the liability).

contribution claims "shall be governed by Federal law," § 9613(f)(1), "implies that the law should be nationally uniform," and required the uniform application of the UCATA pro tanto approach, because it best matched "the most closely related rule of law" in § 9613(f)(2). *Id.* at 307–08. We disagree with this reasoning. While the statement that § 9613(f)(1) contribution claims "shall be governed by Federal law," clarifies that CERCLA requires us to adopt a federal rule, rather than adopt the law of the forum state, it does not raise the inference that Congress required federal courts to adopt a single method of allocating liability among nonsettling parties. Rather, the statutory language raises the opposite inference, both by mandating the use of UCATA for government settlements but not for private settlements, and by directing the courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." § 9613(f)(1)–(2).

## C

TEO argues that even if the district court had discretion to determine which approach to apply in allocating response costs among liable parties, it abused its discretion here by first ruling that the UCFA proportionate share approach would determine the legal effect of the settlements, and then refusing to assess the settling parties' equitable share of fault.

Although courts have discretion to choose a method to allocate liability to nonsettling defendants in private-party contribution actions under CERCLA, they must exercise this discretion in a manner consistent with § 9613(f)(1) and the purposes of CERCLA. Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion. *See* § 9613(f)(1);

*Chubb Custom*, 710 F.3d at 971; *see also Capuano*, 381 F.3d at 21 ("[I]t is not unimaginable that the use of one of these approaches might produce a result so inequitable that it would constitute an abuse of discretion . . . ."). Because a district court's chosen method will likely affect parties' decisions to settle or contest a proposed settlement, once a district court selects a method in a final order approving a settlement agreement, failing to follow that approach may produce a result that is inequitable and inconsistent with CERCLA's goals.

In this case, the district court first ruled that it was adopting the UCFA proportionate share approach. This ruling signified that, at trial, the court would identify the equitable factors that it deemed appropriate, allocate costs according to those factors among all potentially responsible parties, including those that settled, and hold the non-settling parties responsible only for their proportionate share of the costs. *See* § 9613(f)(1); UCFA § 6. Given this ruling, TEO had no need to contest the settlements or adduce evidence as to their fairness or the appropriate factors that should be applied in determining the settling parties' equitable share of response costs under § 9613(f)(1).

At trial, however, the district court declined to determine the proportionate share of both the settling and nonsettling parties, in contravention of the UCFA methodology. Instead, the district court allocated to the settling parties only the response costs set forth in the settlement agreements, ruling that "the appropriate measure of the liability of the settling defendants is measured by the amount of dollars that were paid to Ameripride and that the defendants get a one-dollar-for-one-dollar credit for that." This ruling effectively applied the UCATA pro tanto approach.

Due to TEO's justifiable reliance on the court's UCFA ruling, TEO did not have a reasonable opportunity to present evidence and argument regarding the fairness of such an allocation. Nor did the district court explain how its approach complied with § 9613(f)(1) and furthered the goals of CERCLA.**[9]**  Because the court failed to explain its methodology for complying with § 9613(f) and furthering the goals of CERCLA, whether under the UCFA proportionate share approach or the UCATA pro tanto approach, we cannot determine whether it abused its discretion in allocating response costs. *See Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1015–16 (9th Cir. 2010) (explaining that "meaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning" (internal quotation marks omitted)).  Accordingly, we remand to the district court for further proceedings.**[10]**

IV

We next turn to TEO's arguments that the district court made legal errors in calculating the amount subject to equitable apportionment.  TEO claims the district court erred by failing to determine whether AmeriPride's settlements with Huhtamaki and Cal-Am were solely for "response costs"

---

**[9]** The court's conclusory statement that the settlements represented "a fair allocation of settlement proceeds and liabilities" is insufficient to explain the equitable factors it considered and how it determined the appropriate allocation of liability according to those factors. *See Boeing*, 207 F.3d at 1187.

**[10]** In light of our remand for further proceedings, we do not address TEO's alternative argument that even if the district court properly applied the UCATA pro tanto approach, it incorrectly credited the settlement monies received by AmeriPride.

that were incurred consistent with the NCP, and by setting the date on which prejudgment interest begins accruing based on equitable considerations, rather than the statutory requirements in § 9607(a).

These arguments require us to consider the relationship between the statute authorizing cost recovery, § 9607(a), and the statute authorizing contribution actions, § 9613(f)(1). Under § 9607(a)(A)–(D), a potentially responsible party is liable for specified costs incurred by a government, including natural resource damages and certain health effects studies, and for "necessary costs of response incurred by [a private party] consistent with the national contingency plan." Section 9607(a) further provides that "[t]he amounts recoverable in an action under this section shall include interest on the amounts recoverable" under § 9607(a)(A)–(D), and "[s]uch interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned." § 9607(a).

To prevail in a private cost recovery action under § 9607(a), a plaintiff must establish, among other things, that the release of a hazardous substance "caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan.'"  *Carson Harbor*, 270 F.3d at 870–71.  Therefore, a defendant liable in a private cost recovery action under § 9607(a) would be liable for response costs that meet such criteria.

A party liable under § 9607(a) may bring a contribution action under § 9613(f)(1), which permits courts to allocate "response costs" among liable parties.  Such a plaintiff may seek contribution "from any other person who is liable or potentially liable" under § 9607(a).  The liability of the

defendant in the contribution action is therefore also defined by § 9607(a).

Reading these sections together, when a private plaintiff who incurred liability under § 9607(a)(B) for a third party's response costs seeks contribution under § 9613(f)(1) for such costs, the only response costs recoverable from the defendant in the contribution action are those that were necessary and consistent with the NCP.  Accordingly, if a party who was liable under § 9607(a) entered into a settlement agreement to discharge its CERCLA liability to a third party, it can seek contribution under § 9613(f)(1) only for the settlement costs that were for necessary response costs incurred consistent with the NCP.  *See Atl. Research*, 551 U.S. at 139 (clarifying that a responsible party that pays money to satisfy a settlement agreement or a court judgment does not incur its own response costs, but reimburses other parties for response costs that they incurred).  This conclusion is consistent with the Tenth Circuit's reasoning.  *See Cnty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1517 & n.13 (10th Cir. 1991) (holding that "consistency with the NCP is an element of a CERCLA contribution claim").

Our interpretation is also consistent with the statutory scheme as a whole.  Nothing in the statute suggests that liability incurred under other statutes or state tort law is allocable in a contribution action under § 9613(f)(1); there is "no suggestion in the statute that Congress intended CERCLA to create a general federal right of contribution for damages and response costs that are not otherwise cognizable under the statute."  *Cnty. Line*, 933 F.2d at 1517.  Indeed, allowing a party to recover settlement money in a contribution action under § 9613(f)(1) without first requiring the party to prove that the settlement reimbursed the recipient

for necessary response costs incurred consistent with the NCP could produce incongruous results. *See id.* at 1517 n.13. For instance, AmeriPride could successfully defend a § 9607(a) action brought by Huhtamaki or Cal-Am by proving that Huhtamaki and Cal-Am's response costs did not comply with the NCP, settle with Huhtamaki and Cal-Am for liability under state law, and then seek contribution under § 9613(f)(1) against TEO for the settlement monies it paid. Accordingly, the district court erred in failing to determine the extent to which the amounts paid by AmeriPride to Cal-Am and Huhtamaki were incurred consistent with the NCP.[11]

Our reading of § 9613(f) also resolves the question whether the district court erred in setting the date on which prejudgment interest began accruing based on equitable considerations rather than the statutory requirements in § 9607(a). Because § 9613(f)(1) incorporates § 9607(a) to the extent it delineates the nature of recoverable costs, and the amounts recoverable under § 9607(a) include "interest on the amounts recoverable," such costs are also recoverable in a contribution action under § 9613(f). Further, because the accrual date for determining this element of response costs is specified in § 9607(a), that accrual date is equally applicable to a court allocating costs under § 9613(f)(1). Because § 9613(f) incorporates the liability provisions of § 9607(a), the court is not free to exercise its discretion in determining the methodology for calculating prejudgment interest. In

---

[11] The district court's mere observation that the gravamen of Huhtamaki and Cal-Am's claims was the contamination of the ground water does not substitute for factual findings, based on evidence in the record, establishing that AmeriPride's settlements reimbursed Huhtamaki and Cal-Am solely for necessary response costs incurred consistent with the NCP.

reaching this conclusion, we join the majority of other circuits that have addressed this issue.  *See, e.g.*, *Capuano*, 381 F.3d at 28 ("Since the prejudgment interest provision of § 9607 refers to 'actions under this section' and because § 9613(f) incorporates the liability provisions of § 9607, an action for contribution also incorporates the prejudgment interest provision."); *see also United States v. Consol. Coal Co.*, 345 F.3d 409, 415 (6th Cir. 2003); *Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 177 (2d Cir. 2002); *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 800–01 (10th Cir. 1996).  *But see Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 247 (3d Cir. 2005) (holding that § 9613(f)'s silence on the issue of prejudgment interest "fairly leads to an interpretation that, in contribution cases, such an award is discretionary"). Here, the district court erred in holding that prejudgment interest began accruing on the date AmeriPride incurred the relevant costs without determining whether that date was later than the date on which AmeriPride demanded a specified amount in writing from TEO.  *See* § 9607(a).

On remand, the district court should determine what portion of AmeriPride's settlements with Huhtamaki and Cal-Am reimbursed them for necessary response costs they incurred consistent with the NCP.  The district court should also apply the interest provisions in § 9607(a) to determine when interest began to accrue.

V

We now turn to TEO's final argument that the district court erred when it assigned TEO's causes of action against its insurers to AmeriPride pursuant to section 708.510 of the California Code of Civil Procedure.

Rule 69(a)(1) of the Federal Rules of Civil Procedure states in relevant part that "[a] money judgment is enforced by a writ of execution," and "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located." Here, the relevant state law is section 708.510 of the California Code of Civil Procedure (section 708.510), which provides that a "court may order the judgment debtor to assign to the judgment creditor . . . all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments." The statute provides a nonexclusive list of types of payments subject to assignment, including "[w]ages due from the federal government that are not subject to withholding under an earnings withholding order," "[r]ents," "[c]ommissions," "[r]oyalties," "[p]ayments due from a patent or copyright," and an "[i]nsurance policy loan value." Cal. Civ. Proc. Code § 708.510(a).

We conclude that the district court erred in assigning TEO's causes of action against its insurers to AmeriPride pursuant to section 708.510. Section 708.510 permits assignment of "a right to payment due or to become due," and lists "types of payments" that are subject to assignment. In California, "[a] cause of action for damages is itself personal property," rather than a type of payment. *See Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233, 238 (Ct. App. 2005). A court therefore may assign only the right to payment due from a cause of action under section 708.510, and may not assign the cause of action directly. While causes of action of a non-personal nature may be generally assignable under California law, as AmeriPride argues, section 708.510 does not apply to all voluntarily assignable property rights, but only to "all or part of a right to payment due." Cal. Civ. Proc. Code § 708.510. Accordingly, the

district court erred when it assigned TEO's causes of action against its insurers to AmeriPride.

## VI

In sum, we vacate the district court's judgment and remand to the district court with instructions to (1) explain which equitable factors it considered in allocating $3.25 million in costs to the settling parties, or select those factors and allocate costs in accordance with those factors in the first instance; (2) determine the extent to which AmeriPride reimbursed Huhtamaki and Cal-Am for necessary response costs incurred consistent with the NCP; and (3) apply the interest provisions in § 9607(a) to determine when interest began to accrue on the costs paid by AmeriPride.

**VACATED AND REMANDED.**